## Webb, et al. v. Webb's Guardian, et al.

(Decided November 30, 1917.)

### Appeal from Floyd Circuit Court.

1. Infants—Sale of Minerals.—Under subsection 3, of section 489, of the Civil Code, the court may adjudge the sale of the minerals in the land, with reasonable rights and privileges in the use of the

surface of the land, necessary for the purpose of practically mining the minerals, and retain for an infant the surface of the land, if it is to the interest of the infant that such sale be made.

2. Infants—Appeal and Error.—A judgment confirming a decretal judicial sale of the vested real property of an infant, under section 489, subsection 3, of the Civil Code, will not be reversed upon appeal, for the single reason, that the judgment, under which the sale was made, was erroneous, and was reversed after the sale was made and confirmed, and deed made to purchaser, where the court, which rendered the judgment, decreeing the sale, had competent jurisdiction of the parties and subject matter of the action, and the sale was regularly and fairly made, to a bona fide purchaser.

3. Infants—Judicial Sales—Bona Fide Purchasers.—A party to the action, before judgment, or the plaintiff, who procures the judgment, or his assignee, or an attorney, in the action in which an infant's real property is adjudged to be sold, if a purchaser of the property at the sale, is not a bona fide purchaser, within the meaning of section 391, of the Civil Code.

4. Infants—Judicial Sales—Bona Fide Purchasers.—A purchaser, at a decretal judicial sale of an infant's real property, and who is a stranger to the record, is a bona fide purchaser, within the meaning of section 391, of the Civil Code, if no reason exists for denying to him that status, except the fact, that when his bid is tentatively accepted and reported, he thereby becomes a party to the action.

MAY & MAY, J. P. HOBSON & SON and W. W. WILLIAMS for appellants.

SMITH & COMBS, ED. C. O'REAR and ALLIE W. YOUNG for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing in part and affirming in part.

This appeal is from a judgment of the Floyd circuit court, under which certain lands and interests, in lands, owned by infant defendants, in the action, were adjudged to be sold, and, also, from a judgment, which approved the report of sale, made under the judgment, by the commissioner of the court. The appellee, Lizzie Webb, as the statutory guardian of Oliver Webb, Maggie Webb, Mary Webb, Troy Webb, Londa Webb and Willie Webb, was the plaintiff, in the circuit court, and the named infants were the defendants. The action was, under subsection 3, of section 489, of the Civil Code, for a sale of the infant defendants' lands for their maintenance and education. The defendants were, all, under the age of fourteen years, except one, and were in the custody of

the plaintiff, who was their mother and guardian. Their father was dead. A summons was served upon the one, who was fourteen years of age, and a guardian *ad litem* was appointed, by the clerk of the court, for the ones who were under fourteen years of age, and upon whom the summons was served for them, as provided by section 52, of the Civil Code. After the summons was served, a guardian *ad litem,* to defend the action for all of the infants, was appointed by the clerk of the court, in vacation, as provided by subsection 2, of section 38, of the Civil Code. Thereafter, the court, by an order, approved and confirmed the appointment of the guardian *ad litem.* Proof, tending to support the necessity of the sale, was taken upon interrogatories propounded by the plaintiff and upon cross-interrogatories propounded by the guardian *ad litem.* Before the cause was submitted, the plaintiff executed a bond to the defendants, as provided by section 493, of the Civil Code, and the guardian *ad litem* filed his answer, in which he alleged, that he had carefully examined the case and could not make any defense. The petition sought the sale of a twenty-five-acre tract of land, which was jointly owned by the infants. It, also, sought the sale of the coals, minerals, mineral products, salt minerals, salt waters, fire and potter's clay, iron ores, and stone, which were in and upon the land, and such of the standing timber on the land, not exceeding ten inches in diameter, as the purchaser might deem necessary for mining purposes or railroads or branch lines of railroads, as might thereafter be constructed upon the lands, and divers and sundry other rights, privileges and easements in and connected with a 377.40-acre tract of land, which was owned jointly by the infants. Both tracts of land were inherited by the infants from their deceased father, and the title papers held by the father were filed with the petition.

At the November term, 1909, the cause was submitted and the court adjudged that the twenty-five-acre tract of land be sold. With reference to the interest sought to be sold in the 377.40-acre tract, the following judgment was entered, describing the thing to be sold:

"The court further adjudges that the undivided one-sixth interest, each, of the defendants, Oliver Webb, Maggie Webb, Mary Webb, Troy Webb, Londa Webb, and Willie Webb, in and to the coal mineral and mineral products, all salt minerals and salt water, fire and potter's clay, iron and iron ore, all stone, and such of the

standing timber, not to exceed ten inches in diameter, at the time of mining, as may be, or by the purchaser, his or its heirs, successors or assigns, be deemed necessary for mining purposes, and including timber necessary for railroads, or branch lines thereof, that may be hereafter constructed upon said land, and the exclusive right of way for any and all railroads and ways, and pipe, telegraph and telephone lines, that may hereafter be located on said property by the purchaser, his or its heirs, successors or assigns, or by any person or corporation under authority of said purchaser, his or its heirs, successors or assigns, in, of, under, concerning or appurtenant to the tract of land hereinafter described as tract No. 776, together with the right to enter upon said land, use and operate the same and surface thereof and make use of and for this purpose divert water courses thereon, in any and every manner that may be deemed necessary or convenient for mining and therefrom removing or otherwise utilizing the products of the said minerals, and for the transportation therefrom of said articles, and the right to use the same, as well for the removal of the products taken from or out of any other land owned or hereinafter acquired by the purchaser, his or its heirs, successors, or assigns, and the right to erect upon the said land, maintain, use and at pleasure remove therefrom all such buildings and structures as may be necessary or convenient to the exercise and enjoyment of the rights and privileges herein, and in the use of said land and surface thereof by the purchaser, his or its heirs, successors or assigns, it, its successors or assigns to be free from and to be thereby released from liability or claim of damage to the said defendants, their personal representatives, heirs or assigns. Also free access to go upon and over the said tract of land to the purchaser, his or its heirs, successors or assigns, for the purpose of surveying and prospecting the aforesaid property and interest. That there shall be reserved in the deed made to the purchaser, and is reserved in this judgment of sale herein to the infant defendants all the timber upon the said land, except that necessary for mining and the purposes hereinbefore mentioned, and the free use of the land for agricultural purposes, so far as such use is consistent with the rights ordered and adjudged to be sold, and the right to use and mine coal for the household and domestic purposes of the said defendants. That there is, also, reserved in the judgment and not hereby adjudged to be sold, the dwell-

ing house and the bottom land lying below the Rock Fork road; also two acres of coal back of said dwelling house. No miners' houses are to be built on bottom land, be sold."

The commissioner filed his report of sale, which showed that the twenty-five-acre tract had been appraised at the sum of five hundred dollars, and was purchased by J. W. Webb for five hundred dollars, and the interests, in the 377.40-acre tract, adjudged to be sold, were appraised at the sum of three thousand, seven hundred and seventy-four dollars, and were purchased by the Gibson Coal & Coke Company for the sum of three thousand, seven hundred and seventy-five dollars. No exceptions were filed to the report, and it was regularly approved and confirmed by a judgment of the court on the 13th day of March, 1910. Deeds of conveyance were executed to the purchasers of the land by the commissioner, under orders of the court, and the deeds were reported and approved. The sale bonds were paid and the proceeds, under orders of the court, were paid over to the plaintiff, guardian.

On March 20th, 1916, this appeal was first attempted, but was not perfected until June 1st, 1917. The cause is now here upon appeal by Maggie Minnix (nee Webb) and Mary Allen (nee Webb), who have now become twenty-one years of age and married women, and by Troy Webb, Londa Webb, and Willie Webb, who are yet infants, by their next friend. The appeal was not taken until Oliver Webb had been twenty-one years of age for more than one year, and the appeal as to him has been dismissed. The appellees are the Gibson Coal & Coke Company, the purchaser of the interests sold in the 377.40-acre tract of land, and the Elkhorn Coal Corporation.

An appeal seems not to have been taken from the judgment directing a sale of the twenty-five-acre tract of land, nor from the order, which approved that sale, and hence the judgment directing the sale of the coal and other minerals and privileges attached to their ownership in the 377.40-acre tract of land, and the judgment confirming the sale, will be considered, only.

(a) It is insisted that a judgment, which orders the sale of anything less than the entire interest, which an infant may own in a tract of land, or in such part of the tract as may be adjudged to be sold, is void, upon the ground that the court has no authority to order such a sale, and for that reason the judgment, which directed a

sale of the various minerals and rights connected with them in the 377.40-acre tract of land, leaving to the infants the surface of the land, was void. This argument is urged upon the provisions of section 489, *supra,* which authorizes a court of equity to adjudge a sale of a vested estate of an infant, in real property, for the education and maintenance of the infant, it being urged, that, that statute does not authorize the court to adjudge the sale of such interests. It is true, that courts of equity, in this state, have no inherent power to adjudge the sale of lands of infants, but the power to do so is purely statutory, and the authority given by such statutes cannot be exceeded. Elliott v. Fowler, 112 Ky. 376; Watts v. Pond, 4 Met. 61; Ewing v. Riddle, 8 Bush, 568; Barrett v. Churchill, 18 B. M. 387; Vowels v. Buckman, 6 Dana, 466; Bullock v. Gudgel, 25 R. 1413; Hicks v. Jackson, 24 R. 218; Walker v. Smyser, 80 Ky. 620; Graham v. Kitchen, 118 Ky. 22; Meddis v. Bull, 13 R. 767; Little v. Fishback, 25 R. 260; Caulder v. Chenault, 154 Ky. 781. Section 489, subsection 3, of the Civil Code, authorizes a court of equity to order a sale of the vested estate of an infant, in real property, for his maintenance and education. Under this statute, and for the purpose there stated, the court cannot order any other kind of an estate of an infant, in real property, to be sold, except an estate, which is vested in the infant, at the time of the judgment, but it does not require the whole vested estate in the property to be sold. A sale should not be adjudged of any interest in the vested estate of an infant in real property, unless it is to the best interest of the infant, that the sale should be made. The estate, which the infants, in this action, owned in the minerals, as well as the rights in the surface of the lands, which were sold, was a vested estate, and the interests, which were left to them and not sold, were, also, a vested estate. That one person may own the minerals, which are under the surface, and another one own the surface of the land, or that one may own the surface and another the standing timber trees upon the land, is too well recognized and conceded to require the citation of authorities to sustain it. If one owns the surface and another the minerals in the land, each of them is the owner of real property, and may have vested estates in them. Each of these estates is the subject of sale and conveyance. Hays v. Wicker, 161 Ky. 706; Carpenter v. Carpenter, 145 Ky. 473; Ayer & Lord Tye Co. v. Witherspoon, 30 R. 1068; Kincaid v. McGowan, 88 Ky. 91. It is, also, well known,

that the owner of minerals, such as coal in lands, must necessarily, in mining these coals and disposing of them, have timber for use in the mines, and must have certain rights in the surface of the land for the building of tramways and railroads over the land, and the erection of tipples and other necessary buildings in the operation of mining, and other necessary privileges to be exercised on the surface of the land. In Hays v. Wicker, *supra,* it was said:

"We do not see that a substantial difference can be made between selling coal under the land without selling the surface, and selling the timber on the land without selling the surface. The chancellor should only sell so much of the ward's estate as his interest requires to be sold, and, if he may sell half of the land, we do not see why he may not sell a severable estate in the land, retaining the surface so as to give him a home. . . . We, therefore, conclude, that the judgment complained of is not void for want of authority in the court to order the sale."

The estate of the infant adjudged to be sold in that case was very similar to the one adjudged to be sold, in the instant case. The judgment of sale in the case of Hays v. Wicker, *supra,* was held to be erroneous, and the judgment, in the instant case, is likewise erroneous for the same reason, and a clear abuse of the discretion of the chancellor. To adjudge a sale of the standing timber upon the land of an infant, without a sale of the surface, is allowable, only, when it is to the interest of the infant, and the same rule should apply to the sale of minerals under the surface of the lands, without a sale of the surface. Such a sale may be ordered, with reasonable provisions attached, to enable the mining to be done without destroying the value and usefulness of the estate in the land left unsold, to the infant. A reading of the description of the thing, sold in the judgment appealed from, makes it manifest, that the provisions attached to the minerals and rights adjudged to be sold are unreasonable, and are calculated to greatly impair the value of the surface of the land for any purpose, which the infant or any one to whom he might sell it, could subject it, and as stated in Hays v. Wicker, *supra,* "an infant's land should not be sold with such provisions as these."

(b) The appeal from the judgment confirming and approving the sale will now be considered. The purchaser, the Gibson Coal & Coke Company, was not a

party to the suit, and so far as the record indicates, had no part in procuring the judgment to be rendered, and the thing sold, which was the subject of its purchase. The court had jurisdiction of the parties and the subject matter of the suit, and, under the statute, to decree a sale of the vested estate of the infants, in the real property sold, if it was necessary for their maintenance and education. There was no irregularity in the proceedings, and no insistence that the sale was not fairly made and carried out, or that the purchaser was other than one in good faith. The appeal was not taken until after seven years after the judgment had been rendered, the sale made and the report of it approved and confirmed, the deed executed to the purchaser and the purchase price paid. The evidence in the case was to the effect, that the value of the minerals and rights and privileges on the surface of the land, which were adjudged to be sold, was not in excess of the price the purchaser gave, and the price paid was equal to the appraised value. The only ground upon which it is insisted, that the judgment confirming the sale ought to be set aside, is, that the chancellor erred in decreeing a sale of the interests, in that he imposed unreasonable provisions, for the benefit of the purchaser, at the sale, in the use of the surface of the land; or, in other words, that the order confirming the sale ought to be set aside, because it was made under an erroneous decree. The common law rule was, that a purchaser, under an execution sale, which was fairly made, could not be divested of his title to the property purchased at such sale, although the judgment upon which the execution was issued should be, upon appeal, held to be erroneous and reversed. Nearly a century ago now, the doctrine was established in this state, in analogy to the doctrine, which prevailed in regard to sales under execution, that sales made under judgments of courts of equity, when the sale was fairly made and reported to and confirmed by the court, that the purchaser at the sale could not be required to restore the property, when, thereafter, the judgment, under which the sale was made, was reversed, because erroneous. This doctrine was founded upon what was called public policy, in that it was against good public policy, that purchasers, at judicial sales, should not have perfect faith in the integrity of the sale —faith in the integrity of the sale being for the benefit of both the owner of the property sold and the individual procuring it to be sold by the judgment. This doctrine, being founded upon public policy, however, was not al-

lowed to be extended any further than the public policy required, and so it has uniformly been held, that all proceedings and sales made under void judgments are void, and when the void judgments have been reversed upon appeals, that restitution of the property sold should be made. Green v. Breckenridge, 4 Mon. 545; Roberts v. Stowers, 7 Bush 296; Carpenter v. Strother, 16 B. M. 295; Brownfield v. Dyer, 7 Bush 508; Grigsby v. Barr, 14 Bush 330. Further, limiting the doctrine to the demands of public policy, it has been continuously held, that when property has been obtained under the judgment of a court, without the intervention of a sale by a commissioner, the parties, who obtain the property and their privies, are *pendente lite* purchasers, and in the event of a reversal of the judgment, may be required to return the property or its value to the owner. Clay, et al., v. Marshall's Heirs, 4 Dana 99; Debell v. Foxworthy's Heirs, 9 B. M. 228; Clark's Heirs v. Farrow, 10 B. M. 446; Earle v. Crouch, 3 Met. 455. The rule which protects the purchaser, at the sale, regardless of the reversal of the judgment, under which the sale is made, does not apply for the protection of the purchaser at a judicial sale, where the property sold is owned by some one, other than the defendant, on account of whom it is sold. Baker v. Baker, 87 Ky. 461; Spicer v. Seale, 20 R. 1869. A sale by the commissioner, under a judgment of a court of equity, also, differs from a sale under an execution, in that if the officer has such an execution as will protect him from proceeding to execute it, and the sale made by him is fair, it is concluded, when the property is delivered to the purchaser and the title in the property attaches at once, and will not be divested, because the judgment, upon which the execution was issued, may be, thereafter, reversed; while a sale by a commissioner, under a judicial decree, is not concluded until it is judicially ratified and confirmed. Forman v. Dana, 3 Dana 622; Campbell v. Johnson, 4 Dana 186; Busey v. Hardin, 2 B. M. 411; Dale v. Sherley, 5 B. M. 494; Egard v. Chearnly, etc., 1 Bush 13. The general rule prevailing in this state until recent years, with the above exceptions, has been, that where the court has jurisdiction of the parties and the subject matter of the action, and adjudges a sale by a commissioner, which is fairly made, and the sale is reported and confirmed, the purchaser of the property cannot be divested of it, because the judgment, under which the sale was made, was erroneous, and was thereafter reversed upon appeal. The

same rule holding in regard to a purchaser, at a sale, made under a judicial decree, as at an execution sale. Bustard v. Gates, 4 Dana 430; Shackelford v. Hickman & Hunt, 4 B. M. 263; Lampton v. Usher, 7 B. M. 62; Benningfield v. Reed, 8 B. M. 104; Harrison v. Horde, 12 B. M. 472; Maderia v. Hopkins, 12 B. M. 602; Dorsey v. Kendall, 8 Bush 298; Salter v. Dunn, 1 Bush 317; Taylor v. Fitzsimmons, 19 R. 583; Rose v. Taylor's Executor, 10 Ky. Opin. 529; Talbott v. Campbell, 23 R. 2175; Blake v. Wolf, 23 R. 1143; May v. Ball, 22 R. 1681; Perkins v. McCorley, 97 Ky. 43; Wright v. Bell, 10 Ky. Opin. 277; Rankin v. Eastin, 11 Ky. Opin. 173; Hardin v. Woolridge, 29 R. 576; Thornton v. McGrath, 1 Duvall 354; Miller v. Hall, 1 Bush 235; Campbell v. Johnson, 4 Dana 185; Bank of U. S. v. Carroll, 4 B. M. 49; Stump v. Martin, 9 Bush 289; Musgrave v. Parrish, 11 R. 573; Weller v. Bissell, 3 R. 759; Yocum v. Forman, 14 Bush 494; Corley v. Ray, 7 R. 295; Earl v. Porter, 2 R. 316; 319; Judah v. Bickel, 4 R. 715; Scott v. Estill, 7 R. 222; Dudley v. Beatty, 5 R. 773; Stewart v. Hoskins, 8 R. 696; Dunn v. German Security Bank, 8 R. 777; Amos v. Stockton, 5 J. J. M. 638; Clark v. Farrow, 10 B. M. 446; Gossam v. Donaldson, 18 B. M. 230; Parker's Heirs v. Anderson's Heirs, 5 Mon. 542; Bridges v. McAllister, 106 Ky. 791; Leavell v. Carter, 112 S. W. 1119; Drovers & Mechanics Bank v. Northern Coal & Coke Co., 133 Ky. 773; Hays v. Griffith, 85 Ky. 337; Singleton v. Cogar, 7 Dana 481; Clark v. Bell, 4 Dana 20. Under several of the above authorities, the general rule prevailing, in this state, seems to have been, that the purchaser, at a judicial sale, was protected, in his ownership of the property purchased, regardless of whether he was or was not a party to the record. It has, also, been held, that the fact that the judgment is erroneous, under which the sale was made, was not a ground for exception to the confirmation of the report of sale. Van Meter v. Van Meter, 88 Ky. 448; Talbott v. Campbell, 67 S. W. 53. The same rule prevailed, as to the integrity of a judicial sale, where the property sold was that of an infant, as prevailed, when the property sold was the property of an adult. As was said in Parker's Heirs v. Anderson's Heirs, 5 Mon. 445:

"Whether any of the parties to a decree be infants or not, there is, however, the same necessity for guarding and protecting the interest of purchasers under decrees, and we know of no principle that can authorize restitution of lands to infants, when sold by a decree of

a court of competent jurisdiction, that would not apply with equal propriety to persons of full age, but if there be any hardship in the rule, it results from error of the court, and it is perhaps better and more to the interest of suitors in general, that the hardship should be borne by the party to whose prejudice the decree may be, though an infant, than that others should be deterred from buying under the decree of a court of competent jurisdiction, from an apprehension of being deprived of their purchase by some misjudgment in the court in pronouncing the decree."

The hard and inflexible rule, above stated, has been changed, to the extent, that, if the purchaser at a judicial sale, either under execution or a decree, is a party to the record, who procured the erroneous judgment, or his attorney, or assignee before the sale, when it is reversed upon appeal, if the property sold is in the hands of such party, he may be required to make restitution of the property, and if not, he can be made liable for its value or at least all, which he received from the sale. Cavanaugh v. Wilson, 108 Ky. 759; Hess v. Deppin, 101 S. W. 362. The modification of this rule, also, permits an infant, when his land has been sold under an erroneous judgment, and upon appeal by him, the judgment, under which the property was sold, is reversed, if the purchaser of the land was the plaintiff, or a party to the action, or an attorney engaged in it, or an assignee of the judgment, the order confirming the sale will, also, be reversed, and a restitution of the property, if desired by the infants, or they may elect to let the sale stand and received the proceeds of the sale. Turner v. Hamlin, 152 Ky. 469; District of Clifton v. Pfirman, 110 S. W. 406; Turner v. City of Middlesboro, 117 S. W. 422. In District of Clifton v. Pfirman, *supra,* the court said:

"And we have no hesitation in declaring, that, if a judgment against infants is reversed, the purchaser, if he be the plaintiff, or a party to the action, will not be permitted to hold against their interest real property bought under it, at a judicial sale. In such case, the infants may either elect to allow the sale to stand, or they may have the sale set aside and take the property upon the payment of the debt, which is a lien upon it."

Section 391, of the Civil Code, fixes the status of a purchaser at a judicial sale of an infant's real property, and is as follows:

"An infant, other than a married woman, may, within twelve months after attaining the age of twenty-one

years, show cause against a judgment, unless it be for a tort done by, or for necessaries furnished to the infant, or unless it be rendered upon a set-off or counter-claim stated in an answer; but the vacation of such judgment shall not affect the title of a *bona fide* purchaser under it.''

A purchaser, at a judicial sale, fairly made, under a judgment of a court of competent jurisdiction, and who is a stranger to the record, up to the rendition of the judgment, has never been held to be other than a *bona fide* purchaser, in the meaning of the section of the Civil Code, above quoted. The adjudicated cases dealing with sales of infants' real property have gone to the extent, only, of holding, that a party to the suit, or an attorney in the case, or the plaintiff procuring the judgment, or an assignee of such plaintiff, are not *bona fide* purchasers. We do not, however, mean to hold, that only such persons, as hold such relations to the record, as a plaintiff, who procures the judgment, or his assignee, or a party to the suit before the rendition of the judgment, or an attorney in the case, are not *bona fide* purchasers, as other facts and circumstances may exist or arise, which will show, that a purchaser is not a *bona fide* one, other than the relations above mentioned. It might be insisted that a purchaser, at a decretal sale, whose offer to buy must be accepted by the court, and ratified, before he becomes an actual purchaser, by offering a bid, which is tentatively accepted and reported by the commissioner, thereby becomes a party to the suit, and for that reason cannot be a *bona fide* purchaser. True, a purchaser, under such circumstances, becomes a party to the suit for many purposes, but manifestly, such a condition was not intended by the statute to deprive the purchaser of the status of a *bona fide* purchaser, or else the statute would be without meaning, as by its terms, it would be protecting the purchase of one, who does not and could not exist. A purchaser from such purchaser would be charged with knowledge of all things, in the direct chain of title to him, and on *ad infinitum*, and hence, neither the purchaser, at a decretal judicial sale, nor any of his privies could ever be *bona fide* purchasers, and hence there could be no such persons, whose purchase the statute provides shall be protected, and hence the statute would be without force or meaning. The purchaser, at a decretal judicial sale does not become a party until after the rendition of the judgment under which the sale is made, but his bid is made before the report of sale is filed, which makes him a party. In

14 R. C. L. 270, 271, referring to the sale of an infant's real property, under a decree of a court of equity, the following is said:

"If the court has jurisdiction to order the sale . . . the title of an innocent purchaser, at the sale, cannot be divested by a reversal for mere irregularities, though obtained in a direct proceeding for a review of the decree."

If a purchaser, at a decretal judicial sale, is perforce not a *bona fide* purchaser, how could there be such a thing as an innocent purchaser at such a sale?

The rule in this state, which protects the integrity of a judicial sale, has become a fixed rule of property, and as said in a number of the opinions heretofore cited, that, oftentimes, such sales disturb the conscience of the chancellor, but the rule has been adhered to, too long, to now be changed. It does not appear that a judgment confirming a decretal judicial sale has ever been reversed, by any judgment of this court, for the single reason, that it was made under an erroneous decree, which was afterwards reversed upon appeal, where the court, which rendered the judgment ordering the sale, had jurisdiction of the parties and the subject matter, and the sale was fairly and regularly made, and completed by the execution and approval of the deed, and the purchaser was a stranger to the record, until the time of the sale. Hays v. Wicker, *supra*, is not antagonistic to this view, as the opinion, in that case, does not show, that the purchaser was not one of those, who are not within the saving grace, which shields a *bona fide* purchaser.

It is therefore ordered, that the judgment herein, which decreed the sale, be reversed, but the judgment, which approved and confirmed the sale, is affirmed.

Whole court sitting, but Judges Thomas and Clarke dissent from that part of the opinion affirming the judgment confirming the sale.

### DISSENTING OPINION BY JUDGE THOMAS.

The importance of the question involved, affecting as it does the interest of a large class of at least presumably helpless members of society, so much so that they are universally regarded as the wards of courts, I feel compelled to dissent from the opinion of the court holding that the purchaser at a judicial sale of infants' property who is not a party litigant in the suit in which the

judgment of sale was obtained is such a *bona fide* purchaser as that his title will not be affected upon the vacation of the judgment ordering the sale within the contemplation of section 391 of the Civil Code of Practice.

One of the methods by which such a judgment may be vacated is by prosecuting an appeal from the order entering it by the infant against whom it was rendered at any time within one year after he attains the age of his or her majority.

The opinion of the court in this case makes all purchasers at decretal sales of infants' property *bona fide* purchasers within the meaning of the section of the code, *supra,* unless such purchaser is a party litigant in the suit, or perhaps his attorney, and in that way assisted in procuring the judgment.

I have no quarrel to make with the general rule of law that the title of a purchaser at a decretal sale will not ordinarily be affected by a reversal of the judgment ordering the sale. This seems to be the universal rule as found from the authorities cited in the opinion, and that same rule applied also to infants before the enactment of section 391 of the code, as is shown from the excerpt in the opinion from the case of Parker's Heirs v. Anderson's Heirs, 5 Monroe 445. Since the opinion in that case was rendered, and presumably for the benefit of infants, section 391 was enacted, and whatever may be the rule generally with reference to adults, or what may have been the rule formerly in this state with reference to infants, their rights upon the vacation of a judgment for the sale of their property must *now* be governed by the section of the code referred to.

It is evident that the legislature in enacting the section meant to include some class of decretal purchasers of infants' property whose title would be affected by a vacation of the judgment, and in the cases of Turner v. Hamlin, 152 Ky. 469; District of Clifton v. Pfirman, 33 Ky. Law Reporter 529, and Turner v. City of Middlesboro, 117 S. W. (Ky.) 422, it was so held, but it appears that the purchaser at the sales ordered in those cases *was* a party litigant in the cause, and this court determined that they were not *bona fide* purchasers within the meaning of section 391 of the code.

There is nothing in those cases, as I read them, confining the class of non *bona fide* purchasers as used in the section to parties litigant, though the purchasers in those cases happened to be within that class. In 16 R.

C. L., page 113, the status of purchasers at decretal sales of property are thus defined:

"Bidders and purchasers at a judicial sale under a decretal order make themselves parties in interest to the proceedings for some purposes, though they were not parties originally. They subject themselves *quoad hoc* to the jurisdiction of the court in that suit as to all matters connected with the sale or relating to them in the character of purchasers. Accordingly, they have the right to interfere in the proceedings for their own benefit and protection and for the correction of mistakes, and to appear, represent their own interests, and claim at the hands of the court such relief as the rules of equity proceedings entitle them to."

The rule contained in the excerpt just quoted is the one adopted by this court in the case of Wigginton v. Nehan, 25 Ky. Law Rep. 617. Other cases from this court could be found to the same effect.

It will thus be seen that when the bid of a purchaser at a decretal sale is accepted, and he is reported by the officer charged with the duty of making the sale as the accepted purchaser, he becomes a party to the proceeding from that time on, and has "the right to interfere in the proceedings for his own benefit and protection and for the correction of mistakes," etc. This would necessarily include the right to interfere for the purpose of correcting errors in the proceedings. By his voluntary act of bidding the purchaser renders himself liable to be reported as such and to be placed in the position of one occupying a relationship to the suit with the rights to which we have referred. He is in a position after that time to take notice of not only what *has been* done, but what is *thereafter* done affecting the title which he is seeking to acquire, which necessarily includes the correctness or incorrectness of the judgment ordering the sale.

I do not interpret the cases of Vanmeter v. Vanmeter, 88 Ky. 448, and Talbott v. Campbell, 67 S. W. 53, referred to in the opinion, as restricting the purchaser's rights in the particulars mentioned, to question by exceptions the regularity of the judgment, for I do not find that the exceptions to the sales in either of those cases were filed by the purchaser, and if they were, the opinions are based upon the general rule applicable to purchasers at judicial sales upon vacating of the judgment without considering the effect of section 391 now under consideration.

The original purchaser at the decretal sale thus becoming a *party* to the proceeding, I see no reason why the rule announced in the Pfirman case, and other cases referred to, should not apply to such a purchaser. To hold otherwise, as does the majority opinion, would almost and in some cases entirely render section 391 of the code nugatory.

It is a well-known fact that a majority of cases in which lands of infants are sold have no other parties litigant to them except the guardian for the infant and the infant itself. The guardian could not purchase the land because of the fiduciary relation which he sustains to his ward, and the infant not being *sui juris* would be barred from making the purchase, although he might be financially able to do so.

In this character of cases, howsoever erroneous the judgment might be, the purchaser (not being a party litigant to the suit) would obtain a good title and be immune from molestation by a subsequent vacation of the judgment by the infant in prosecuting the remedies afforded him by the law.

In construing statutes the purpose which the legislature had in view is one of the cardinal rules that should govern the courts, and it is manifest that the purpose in enacting the section of the code under consideration was to protect infants, who, as we have said, are the favored wards of equity, from having their property sacrificed or otherwise wrongfully taken from them by enabling the infant after becoming an adult to prosecute an appeal from the erroneous judgment. It would be a vain thing to extend to him such a privilege and for him to succeed upon appeal with the result that he would obtain nothing thereby except an empty cupboard. However, out of consideration for those who might obtain the title without ever having been connected with the suit in any manner, the legislature inserted in the section the clause saving the title of *bona fide* purchasers.

A purchaser is not a *bona fide* one who has notice of facts affecting his title. Words & Phrases, Second Series, vol. 1, 470. Such notice need not be actual, but if the purchaser has his attention brought to facts, an inquiry into which, if pursued with diligence, would lead to actual knowledge, he is considered by the law as having notice or knowledge of such defects. *Idem.* 471. If the bidder is reported by the officer making the sale as the purchaser, he is required to take notice, as seen, and he cannot be considered in law a *bona fide* purchaser

within the meaning of section 391. That section, according to my mind, means that if the title has been conveyed by the purchaser at the decretal sale to some innocent third party who never in any manner became connected with the suit in which the property was sold or had an opportunity to question the judgment, his title cannot be affected by a subsequent vacation of the judgment.

It is said in the majority opinion that a purchaser from one who bought at the sale would be charged with knowledge of all things in the direct chain of his title, and that he would no more be a *bona fide* purchaser than would his immediate or remote vendor who purchased at the sale, but this assumes that the knowledge thus imputed to the subsequent purchaser would be such as to fasten upon him actual knowledge of the defects in the judgment, which is incorrect.

But, be this as it may, if the rule stated in the opinion would apply to the remote vendee of the reported purchaser, it would also apply to a remote vendee of such purchaser if he were a party litigant in the suit, and the majority opinion does not hold, and indeed could not, that such a remote vendee of the purchaser who was a party litigant in the suit would not be a *bona fide* purchaser.

I am aware of the rule favoring the upholding of decretal sales of property, if possible, so as to encourage bidding at such sales, but that rule should not be given the effect of practically taking away the rights of a helpless class of citizens, which it is the delight of equity to protect, and to assist in which the section of the code was enacted.

The majority opinion would render it possible in every case to prevent the sale being set aside upon the vacation of the judgment by the device of having the bid reported and confirmed in the name of some party not connected with the suit as a litigant, and afterwards for him to deed the property to the party litigant.

Infants cannot supersede judgments, and a mere babe might have his property sacrificed by a grossly erroneous judgment and would obtain nothing for his pains after arriving at the age of sufficient maturity to discover his utter undoing, except the satisfaction that he would demonstrate to the trial court its error by procuring a reversal of the judgment.

As this is a dissenting opinion, I have not elaborated the points referred to, but have contented myself with

only a sufficient statement of them to illustrate my position.

: This dissent also applies in the case of Lena J. Hays v. Beaver Creek Coal & Coke Co., this day decided.

" Judge Clarke joins me in this dissent.