## Lawrence Oil Corporation v. Metcalfe et al.

(Decided June 2, 1936.)

(As Modified on Denial of Rehearing Dec. 18, 1936.)

KIRK & BARTLETT for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing in part and affirming in part.

In September, 1930, Martha E. Metcalfe instituted her action in the Ohio circuit court against the Lawrence Oil Corporation, her lessee, seeking to cancel a portion of an oil and gas lease on a 94-acre tract of land, on the ground that the lessee had failed to drill and develop wells on about 44 acres of the tract to protect her oil and gas against robber wells in operation on adjoining lands, as provided in section 3766b-4c, Kentucky Statutes.

The Lawrence Oil Corporation was summoned but filed no answer, and on December 11, 1930, judgment by default was entered canceling the lease to the extent of the 44 acres of the 94-acre tract. On December 20, 1930, Martha E. Metcalfe leased the 44-acre area, on which the lease had been canceled, to Thomas E. Adams, E. F. Bellamy, G. H. Brenner, and Sam Johnson, and they immediately proceeded to start drilling a well on the 44-acre area leased to them. After they had drilled to a depth of about 260 feet, the Lawrence Oil Corporation notified them in writing that it was claiming to be the owner of the lease and the leasehold covering the entire 94-acre tract, including the 44-acre area in question, and that it had superseded the judgment of the Ohio circuit court rendered December 10, 1930, and was prosecuting an appeal therefrom; and further notified

them that any expenses incurred by them in drilling and operating upon the land covered by their lease, including the 44-acre area, would not be reimbursed by the Lawrence Oil Corporation, and that the benefits of any operation on any part of the land covered by its lease would be claimed by it.

Adams and his colessees continued to drill the well which they had started at the time they were served with the notice as stated above, to the further extent of 150 feet, or a total depth of 410 feet, at which point they struck oil and cased in the well and equipped it in the usual manner at a cost, as they claim, of approximately $2,000. They then ceased further operations, waiting the determination of the appeal. However, they were not made parties to that action, and were not parties to the appeal.

The appeal was tried in this court in December, 1931, resulting in a reversal of the judgment, which opinion may be found in 241 Ky. 353, 43 S. W. (2d) 986, 989, wherein the full history and facts of the case are set out, and it is not necessary to give a further statement of them in this opinion. The case was reversed on various grounds, one of which being that the notice and demand by Mrs. Metcalfe to the Lawrence Oil Corporation to develop the 44-acre area complained of, was insufficient.

Upon a return of the case to the circuit court, Mrs. Metcalfe gave no further notices to or made any new demands of appellant to drill any additional wells on the undeveloped portion of the lease, and proceeded to file her amended petition alleging, in substance, that the drilling done by the defendant upon her land as mentioned and described in her petition, namely, one offset well drilled after the service of notice upon defendant, as set out in her petition, and the other wells that were drilled upon the interior of her land and within the area of that portion already substantially developed, were wholly insufficient to protect her against the drainage of oil from under the 44 acres of land mentioned and described in her original petition, which 44 acres the defendant had abandoned, neglected, and moved away from, and declined and refused to drill thereon or develop any part thereof; that the 44 acres thus referred to is that which she described in her original

petition and upon which she sought and still seeks the cancellation of the lease referred to in her original petition; and as result of defendant's neglect and failure to drill the offset wells on the 44-acre area, she had and was still suffering substantial loss by reason of the continued pumping and drilling of oil from several wells on different adjacent tracts of land.

She further plead her lease to Adams and his colessees, which was executed by her to them on December 20, 1930, as stated above, and that she executed the lease to them in good faith, believing that she had the right to lease the property to them, and they accepted same in good faith, and asked that they be made parties to the action and assert whatever interest, if any, they claimed under that lease. She prayed for a cancellation of the lease to the extent of the 44-acre area, and asked that she recover damages of the Lawrence Oil Corporation in the sum of $15,000, which she claims resulted to her by reason of the matters set out in her petition and petition as amended.

Adams and his colesses filed their answer and cross-petition setting up their lease on the 44-acre area, and asserted that by the terms of the lease they were authorized to and did enter upon and take possession, explore, and develop the land covered by the lease. They further alleged that at the time the lease was executed to them the lease of the appellant, Lawrence Oil Corporation, had been canceled by the judgment of the Ohio circuit court, in so far as it affected the 44-acre area in question, which judgment at that time was in force and had not been appealed from, and by reason thereof they were entitled to continue in possession of, explore and develop the land covered by their lease and that the Lawrence Oil Corporation was interfering with their development and claiming the ownership of the leasehold on the entire 94-acre tract, including the 44-acre area in question, and had notified them in writing to cease drilling and developing the land and compelled them to cease their operation thereon, notwithstanding they had drilled an oil well to the jet sand where they discovered and were able to produce oil in paying quanties, and as an offset to some of the wells drilled upon the land adjacent thereto as described and set out in Mrs. Metcalfe's amended petition; that it was necessary that the wells so drilled by them be connected with pipe

lines for the purposes of marketing the oil, and that their failure to do so by reason of the action of the Lawrence Oil Corporation was resulting in continued loss and damage to them and the plaintiff, Mrs. Metcalfe. They adopted and made part of their answer and counterclaim the allegations set out in Mrs. Metcalfe's amended petition, and prayed that their title to the leasehold and rights on the 44-acre area be quieted, and that they recover of the Lawrence Oil Corporation such sum in damages as may have resulted to them by reason of its interference with their operation.

A rejoinder and other subsequent pleadings made up the issue, and after the evidence was taken the court entered judgment dismissing the plaintiff's petition and petition as amended. The court further adjudged that the lease from Mrs. Metcalfe to the intervening petitioners, Adams, Brenner, Johnson, and Bellamy, was valid to the extent of the well drilled by them and 300 feet of land in all directions from the well, but canceled the lease in all other respects, and adjudged the Lawrence Oil Corporation the owner and in possession of the original leasehold estate, excluding the well and a radius of 300 feet therefrom as above indicated, and adjudged Adams, Brenner, Johnson, and Bellamy to be the owners of the leasehold to that extent, to which judgment all parties concerned excepted and prayed an appeal therefrom. The Lawrence Oil Corporation appeals from that part of the judgment adjudging valid the lease of Adams, Brenner, Johnson, and Bellamy, to the extent of the well drilled and equipped by them and 300 feet of land in all directions from it. Adams, Brenner, Johnson, and Bellamy have prosecuted their cross-appeal from so much of the judgment as adjudges their lease invalid except to the extent only of the well they drilled and the 300 feet around it. Mrs. Metcalfe prosecuted her cross-appeal from the judgment as dismissing her petition as amended.

It is insisted for appellant, Lawrence Oil Corporation, among other things, that the trial court properly dismissed Mrs. Metcalfe's petition as amended, because she failed to give further notice or make further demands of it to further develop the 44-acre area on which she sought to cancel the lease. In the opinion, supra, on the former appeal, which we must follow under the "law of the case rule," we said:

"But in this state we have a settled policy that reasonable demand must be made of the lessee for further development. Dinsmoor v. Combs, supra [177 Ky. 740, 198 S. W. 58]; Hughes v. Busseyville Oil & Gas Co., supra [180 Ky. 545, 203 S. W. 515].

"The notice must be unequivocal and so certain and definite as to advise the lessee what is demanded and expected of him. Leeper Oil Co. v. Rowland, 239 Ky. 295, 39 S. W. (2d) 486. The notice and demand should be addressed to the situation existing at the time. Here the notice was given at a time when a certain condition prevailed. The lessee acted, apparently in good faith, and in accordance with an honest judgment, since the contrary is not alleged. He drilled some additional wells. A new situation was thus created, and, if further drilling is desired, a new demand should be made for the development of the precise portion of the land that remains undeveloped. Of course, the notice may be waived, and on a declaration by the lessee, or a showing of the fact, that it would not, in any event, drill upon the 44 acres, even if demand therefor be made in strict pursuance of the rule, the necessity for further opportunity to determine its attitude would be obviated. The petition avers that defendant announced an intention not to drill the other four offset wells demanded, but that is not enough to show that it would not, if proper demand was made, drill further on the 44 acres in question. The four offset wells demanded by the notice may not be necessary or proper, and the allegations in that respect are too uncertain to support a conclusion that such wells are essential for the proper protection of the lines, or for the adequate development of the remainder of the land. But the facts may be shown that would require further drilling on the 44 acres, or warrant a cancellation of the lease as to the undeveloped portion thereof.

"If the plaintiff desires, the petition may be amended to present more fully the facts pertinent to a determination of the rights of the parties under the principles indicated in this opinion. Otherwse the petition should be dismissed without prejudice to the right of plaintiff.

"The judgment is reversed for proceedings not inconsistent with this opinion."

Under the opinion quoted above, it is obvious that Mrs. Metcalfe should have given appellant notice and demand to further develop that portion of the lease complained of before she had the right to proceed further against it, unless such notice was waived by the lessee, thereby obviating the necessity of further notice.

Mrs. Metcalfe insists that further demand or notice was unnecessary because the appellant had declined and refused to drill upon the 44-acre area and had moved its machinery and equipment from the premises, thereby abandoning the development. The allegation that defendant had announced its intention not to drill other offset wells demanded was made in the original petition, and it was held in the former opinion that an announced intention not to drill was insufficient to show that it would not do so if proper demand was made. The amended petition was in substance the same as the original petition, except it alleged that defendant had moved its machinery and equipment from the premises and had abandoned the lease. Under the terms of the lease the lessee had 90 days time in which to start drilling offset wells after notice and demand. If Mrs. Metcalfe had given such notice and made such demand, defendant might have returned to the premises and proceeded to drill the offset wells as demanded. It is pointed out in the former opinion that notice may be waived upon a declaration by the lessee or a showing of the fact that it would not, in any event, drill upon the 44 acres, even if demand therefor be made in strict pursuance of the rule. There is no showing that defendant would not, in any event, drill upon the 44-acre area of the lease.

It is insisted, however, that the evidence of Joshua Bailey, general manager of the Lawrence Oil Corporation, is conclusive that it had permanently abandoned the lease and would not in any event further develop it. But we do not so construe his evidence. He testified that the price of oil had gone down to such extent that it did not pay to drill at that time, but that he expected to further develop the lease when the price of oil advanced to $1.50 per barrel, and unless he changed his mind he

would not do any further drilling on the land until the price of oil reached that price.

This evidence does not show that appellant had permanently abandoned the lease or would not further develop it in any event. And as to whether the suspension of further development until oil reached the desired price constituted grounds of forfeiture or cancellation depends upon the circumstances, taking into consideration the interests of both parties. It appears from the evidence, including maps and exhibits filed, that the 94-acre tract as a whole had been substantially developed except the 44-acre area in question. A number of offset wells had been drilled, one of which was near the 44-acre area line, which was drilled pursuant to the notice given previous to the first suit. Mrs. Metcalfe testified that she had received approximately $10,000 in royalties since the development began in June, 1929, or approximately $3,000 a year. It was also shown that the Lawrence Oil Corporation and its predecessors had spent for drilling alone approximately $38,000. It further appears from the uncontradicted evidence of the manager of the Lawrence Oil Corporation that in December, 1932 (the time the evidence was taken), the price of oil was $1.05 per barrel, and that the Lawrence Oil Corporation was losing money. The rule governing such situation is stated in the former opinion as follows: "But the better rule is that both parties are bound by the standard of what is reasonably required by the exigencies of the particular case"— citing Merrill on Covenants Implied in Oil and Gas Leases, etc., sec. 87. See also, Brewster v. Lanyon Zinc Co. (C.C.A.) 140 F. 801.

In Mills & Willingham on Oil and Gas, sec. 112, the rule is thus stated:

"The test is neither the extravagant expectations of the lessor, nor the unreasoned timidity of the lessee, but whether considered as a separate and independent venture, a reasonably prudent operator would feel justified in drilling the well in the expectation of a profit to himself. * * * The lease, however, is an entirety, and the lessee is entitled to operate it as a whole."

In the comparatively recent Kentucky case of Swiss Oil Corporation v. Risner, 223 Ky. 397, 3 S. W. (2d)

777, 778, quoting with approval from the case of Union Gas & Oil Co. v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323, as follows:

"In such leases it would seem that, inasmuch as the lessee incurs all of the hazardous outlay, he should be the one to be favored rather than the other party to the lease who does nothing but cogitate over his contemplated royalties and collects and enjoys them after they come."

See, also, to the same effect Park v. Young, 261 Ky. 367, 87 S. W. (2d) 963. And in Central Kentucky Natural Gas Co. v. Williams, 249 Ky. 242, 60 S. W. (2d) 580, 584, cited in support of the rule in the former opinion in the case at bar, it is said:

"A co-ordinate rule is that the honest opinion of the lessee that the lease cannot be operated profitably or protected from drainage is entitled to more weight than the opinion of the lessor, or the experts or the judge who tries the case, or all combined, in the absence on his part of fraud or bad faith. Thornton on Oil & Gas Leases (4th Ed.) sec. 173, p. 229."

Many other cases and authorities like and similar to those cited above could be cited, but we deem it unnecessary to extend this opinion further on this point. There is cited for appellee and cross-appellant, Mrs. Metcalfe, numerous cases and other authorities bearing on the question, but an analysis of those authorities will disclose that they are inapplicable to the case at bar.

Conceding that all the authorities are not in accord on this question, yet we think that the great weight of authority, and particularly in Kentucky, warrants the conclusion that Mrs. Metcalfe was not entitled to the cancellation or forfeiture of the lease sought, and the judgment of the chancellor on that branch of the case should be affirmed.

The other branch of the case involving the question of the rights Adams and his colessees acquired under their lease from Mrs. Metcalfe, presents a more serious question.

It is insisted that inasmuch as at the time the lease was executed the judgment of the circuit court

was in force and effect and not superseded or appealed from, Adams and his colessees acquired a valid title to the leasehold on the 44-acre area covered by that lease. We are unable to accept that view.

Adams and his colessees knew or at least had constructive notice of the Lawrence Oil Corporation's lease on the 94-acre tract, including the 44 acres in question, and knew that the judgment canceling the lease on the 44-acre area had not been superseded or appealed from, and in these circumstances they merely succeeded to the rights of their lessor, Mrs. Metcalfe, and did not acquire any further rights than she had. However, a different rule prevails where a purchaser purchases property at a judicial sale pursuant to a judgment in force and not appealed from (Bridges v. McAlister, 106 Ky. 791, 51 S. W. 603, 21 Ky. Law Rep. 428, 45 L. R. A. 800, 90 Am. St. Rep. 267) but that question is not here involved.

Freeman on Judgments (5th Ed.) pp. 249, 250, sec. 1173, states the rule thus:

"Very great doubt does exist, however, where the purchase is made after the entry of the judgment and before the prosecution of any proceeding to avoid it for error. In such cases it appears the more reason to hold that all purchasers are charged with notice of the law, or in other words that the adjudication on which they rely is subject to review and is liable to be overthrown if found to be erroneous; that the right of review within the time allowed by law, is substantially impaired if the party in whose favor it exists may avoid restitution by making a sale of the property to a third person before notice of appeal is filed or writ of error sued out; and hence the rule should be that on reversal of the judgment it can be no longer relied on by such purchasers."

It is pointed out by the author, quoted above, that this rule is not uniformly accepted. But it seems to coincide with the weight of the authority, and has been recognized as the law in this state. There is cited in support of the text above quoted the case of Clarey v. Marshall's Heirs, 4 Dana (34 Ky.) 95, 96. In that case Edmondson sued the Marshall heirs for a specific per-

formance of a contract to convey certain land and obtained a decree to that effect, and commissioner's deeds were accordingly executed. He then sold certain parts of the land to different persons. Subsequently the original judgment was appealed from and reversed, and the Marshall heirs brought suit against the persons who had purchased from Edmondson to recover the land and were successful in the circuit court, and the judgment was affirmed on appeal to this court. After discussing the rule applicable to purchasers at judicial sales which was recognized in the case of Bridges v. McAlister, supra, the court said:

"But none of this reasoning applies to this case. Edmondson was no purchaser under the decree in his favor. The decree itself erroneously gave him that to which he was not entitled; and, the subsequent nullification of that decree necessarily divested him of all semblance of title derived only from the decree. Nor do his vendees stand in the attitude of purchasers under a judgment or decree of court. They voluntarily bought of him that to which he had an ostensible judicial right; but they had bought it, not under the authority or at the instance of a court or any officer of the law, and certainly took it—as his title—on his responsibility, and subject to all the contingencies to which the title of a vendor is ever liable. They bought only his right. They bought it from him, and could not have acquired, thereby, a better or any other right than he had. His right was liable to defeasance; this they must have known, or should be presumed to have understood. His title has been defeated; and, therefore, theirs, which was only derivative and depended entirely on his, must also have failed at the same instant. After his right had been transferred to them, they stood precisely as he would have stood had he never conveyed his interest to them. And, of course, when the decree, which was the only foundation of his and their title, was annulled, no title remained in them. No re-conveyance was necessary, because nothing remained to be conveyed. The superstructure fell with the destruction of its foundation."

See, also to the same effect, Clark's Heirs v. Farrow, 10 B. Mon. (49 Ky.) 446, 52 Am. Dec. 552; Martin,

etc., v. Kennedy, 83 Ky. 335; Webb v. Webb's Guardian, 178 Ky. 152, 198 S. W. 736; Golden v. Riverside Coal & Timber Co., 184 Ky. 200, 211 S. W. 761.

The lessee is the agent of the lessor and cannot acquire any more rights than the lessor had, and if he acquired title during the pendency of an action involving the lessor's title or rights thereunder, he is a lis pendens purchaser and necessarily affected by any judgment rendered in such action, which in this case was the judgment of this court in the former appeal. See, also, Freeman on Judgments, p. 964, sec. 439; Davis v. Kentland Coal & Coke Co., 247 Ky. 642, 57 S. W. (2d) 542.

It is our conclusion, therefore, that the lease of Adams and his colessees is invalid as to the Lawrence Oil Corporation, and that the court erred in adjudging Adams and his colessees the well drilled by them and the 300 feet from it. But this does not mean that Adams and his colessees are not entitled to compensation for the improvements they made on the lease in the circumstances of this case. The right of Adams and others under the developed facts are controlled and must be determined by the rule laid down in Swiss Oil Corporation v. Hupp, 253 Ky. 552, 69 S. W. (2d) 1037.

It is unnecessary to restate or elaborate on the rule laid down in the Hupp Case, supra, and on a return of this case the court will adopt and follow it in determining the rights of Adams, etc., under their lease, regarding them as innocent trespassers from the time they commenced the well until they completed it, although, after they had notice of the fact that the judgment had been superseded, it might be plausibly said, under ordinary circumstances, that from that point on they were willful trespassers.

At the time Adams and others were notified by the Lawrence Oil Corporation that it had superseded the judgment and was appealing therefrom, they had expended considerable sums of money in drilling the well to the extent of 260 feet, but had not at that point reached oil in paying quantities, and, in an effort to save themselves of substantial loss, they proceeded to and did drill 150 feet farther, completed the well, and equipped it. The Lawrence Oil Corporation will now receive the benefits of the well if it should prove to be a paying one, and the money expended by Adams and oth-

ers in drilling it, which the Lawrence Oil Corporation ultimately would likely have been required to do under the terms and obligations of its lease, and, being the recipient of the benefits of the well, it would indeed be inequitable to permit it to enjoy such benefits at the expense of Adams and his colessees.

Upon a return of the case, the court will determine the rights of the parties according to the principles announced in Swiss Oil Corporation v. Hupp, 253 Ky. 552, 69 S. W. (2d) 1037, in so far as the facts of the case are applicable. But it must not be overlooked that in the case supra the well in question had already produced a sum of money sufficient to pay for the drilling of it, and it was held that the cost of the drilling of the well should be paid out of the earnings of it. In the case at bar the well drilled by Adams and his co-lessees has not yet produced any sum of money or earnings and it is not known that it will ever do so. However, once the well is put into operation and if it should prove to be nonproductive, in that event Adams and others would not be entitled to any compensation for drilling a nonproducing well. But on the other hand, if it should produce oil in paying quantities, the Lawrence Oil Corporation will pay Adams, etc., for the drilling of it out of its earnings only. See, also, Fox v. Buckingham, 228 Ky., 176, 14 S. W. (2d) 421.

The judgment is reversed on the appeal, and affirmed on the cross-appeal, and remanded for proceedings consistent with this opinion.

The whole court sitting.