## Webb et al. v. Graf et al.

Jan. 27, 1942.

Wheeler & Wheeler, Simeon S. Willis and C. B. Wheeler for appellants.

Combs & Combs, Joe Hobson and George B. Martin for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

In 1914, J. W. Webb and his wife executed an oil and gas lease to a predecessor of the Kentucky-West Virginia Gas Company on a 425-acre tract of land. The appellants inherited the land from the original lessors. While all of the area is in one boundary, it is virtually cut in two by a 93-acre tract of land known as the Bright tract, on which there are three producing gas wells. Prior to 1936, three wells were drilled on the extreme southeasterly end of the Webb tract. There are producing gas wells surrounding the whole Webb boundary ranging from some 400 to 1700 feet from the line. This action was instituted by the Webb heirs in 1927 to cancel the lease primarily on the ground that it had not been properly developed following notice therefor in September, 1926. The Kentucky-West Virginia Gas Company was made a party by amended petition as assignee of Graf, the original defendant. The answer denied the material allegations of the petition and set forth further that the appellants had stood by and permitted, without objection, the drilling of the three wells in question and had accepted the royalties therefrom and were therefore estopped to deny the validity of the lease; that under existing market conditions the appellants had received more than their fair share of the development in the general territory proven productive of gas; that further development would have been financially ruinous to the appellees; and that if the appellants would dismiss their action the Company would drill another well for them. The affirmative allegations of the answer were never denied.

This case was tried with the case of Ballard Martin v. R. J. Graf et al., 289 Ky. 272, 158 S. W. (2d) 637, this day decided, and was consolidated with that case in this Court. The trial resulted in a dismissal of the petition of the Webb heirs; hence this appeal.

The appellants take the position taken by Ballard Martin in the case of Martin v. Graf, supra, that there was a breach of the implied covenant to develop the lease. The appellees take the position that there was not a proper notice and demand which would entitle the appellants to a cancellation of the lease. They also contend that the lease was properly developed. Notwithstanding this, they say in their brief, "as a matter of grace," that they are willing to surrender the lease on the upper portion of the tract and retain the three wells on the lower 150 acres surrounding them provided the appellants will pay the costs in the lower court and this Court.

We think the notice was sufficient. One of the heirs testified, "I notified them to put down an offset well, down on a hill." He testified further:

"Q. 97. Just before bringing this action did you take any steps to procure the present owner of the lease to develop the property? A. Yes, sir.

"Q. 98. What did you do? A. I employed you. You notified them to develop."

T. E. Dimick, who owned the lease, or was connected with its owners in 1926, testified as follows:

"Q. 66. Ballard Martin gave you notice or request to develop this property did he not before you sold out to the Graf people? A. Yes, as I recall there was some notice which we turned over to the purchaser of the property and I think the notice was given after we had given an option to sell the property.

"Q. 67. Before the sale was consummated? A. Yes.

"Q. 68. Also you got a like notice to develop the J. W. Webb tract on Turkey Creek, did you not? A. Yes, I think that is right.

"Q. 69. Did you turn both notices over to R. J. Graf? A. We turned both notices over to representatives of R. J. Graf."

No question was raised at that time as to the sufficiency of the notice.

The appellees cite the cases of Lawrence Oil Cor-

poration v. Metcalfe, 266 Ky. 819, 100 S. W. (2d) 217; Lawrence Oil Corporation v. Metcalfe, 241 Ky. 353, 43 S. W. (2d) 986; and Union Gas & Oil Co. v. Gillem, 212 Ky. 293, 279 S. W. 626, 630; in support of the contention that the notice was inadequate. We do not so interpret those cases. They hold that the notice for further development must be clear and unequivocal, and the Gillem case sets forth also that all of the tenants in common must concur and unite in the action to enforce a forfeiture on account of breach of the covenant. All of the tenants in common have joined in this action. But it is said also in the Gillem case:

"But Gillem was not the sole lessor of appellant. Moore and Swope were his tenants in common. While it may be true that these cotenants had a right to rely on and take advantage of the notice Gillem had served on appellant in February, 1920 (cf. Union Gas & Oil Co. v. Indian-Tex Petroleum Co., 199 Ky. 384, 251 S. W. 1008), yet this was a right personal to them which they could exercise or not as they saw fit. *  *  *"

It was held in the Union Gas & Oil Company v. Indian-Tex Petroleum Co., cited in the foregoing quotation from the Gillem case, that the grantee of a portion of a tract under a deed executed after notice was given to develop the property may have a forfeiture of the lease for failure to develop any part of the tract without himself giving a notice to develop. True it is in the latter case the vendee of a part of the tract stood in the shoes of his grantor as to that part of the tract conveyed to him, but we think it is just as plausible to hold that one who has a joint interest in the whole tract upon which a lease is given may give notice of forfeiture. Of course the notice will inure to the benefit of the other tenants in common. The notice in the case at bar meets satisfactorily the requirements of such a notice as to its definiteness and certainty. We think it is clear from Mr. Dimick's testimony alone that he knew what was expected of the lessee in relation to the Jonah Webb and J. W. Webb leases.

We think the record shows conclusively that there was a breach of the implied covenant to develop the J. W. Webb lease. The three wells which were drilled prior to 1926 could not have developed more than 100 to 150 acres of the whole tract of 425 acres because of its peculiar shape. We have noted that there are produc-

ing wells surrounding the whole tract. The evidence advanced by the appellees as to the general market conditions for gas, which we have noted in the Martin case, prior to 1927 and thereafter, and as to the number of acres which a gas well will drain, does not alter the conclusion just mentioned because all three of the wells are at the extreme southeasterly end of the tract. There is an area consisting of at least 250 to 275 acres on which no well has been drilled, and from which little, if any, of the gas can be drained by the three wells.

This brings us to the nature of relief to which the appellants are entitled. The prayer of their petition was for a cancellation of the lease and for all proper and appropriate relief, and by an amendment to the petition damages were sought. There have been instances where we have directed the cancellation of a lease on the part of a tract of land not developed and permitted the lessee to retain a reasonable acreage in the developed area. See Ison v. Edra Lee Oil & Gas Company, 241 Ky. 754, 45 S. W. (2d) 3. But, under the circumstances involved herein, and because of the long delay in the final determination of this action, it is not probable that the mere cancellation of the lease on the undeveloped part of the tract would benefit the appellants. It is probable that all or a good portion of the gas has been drained from the undeveloped part of the tract by the wells surrounding it. We have reached the conclusion that a fair determination of the question would be to award damages to the appellants on the basis of two additional wells. Had two wells been drilled upon the undeveloped part of the tract after the notice was given in 1926, it is quite probable that the appellees could have shown that they had properly developed the lease. The rentals on the two additional wells should be calculated upon the bases set forth in the lease, and should run from the time of the institution of the action.

Wherefore, the judgment is reversed with directions that it be set aside and for the entry of a judgment in conformity with this opinion.