## B. & B. OIL CO. et al. v. LANE et al.
## BIGLER et al. v. LANE.

Court of Appeals of Kentucky.
June 13, 1952.

John W. Walker, Irvine, M. E. Strange, Stanton, for appellant.

Shumate & Shumate, Irvine, for appellee.

SIMS, Justice.

These two equitable actions were filed in the fall of 1947 by the heirs and successors in title of J. D. Brandenburg, who died intestate in 1933, to cancel an oil and gas lease on 100 acres in Powell County, and to declare the equipment thereon to belong to the landowners, because the lessees had abandoned the lease. The two actions were consolidated and the chancellor granted the relief sought. A reversal of the judgment is asked on four grounds; 1. A general demurrer should have been sustained to the petitions; 2. the landowners cannot maintain suits for forfeiture for failure to diligently operate the lease without giving notice to the lessees of such failure and demanding improved operations; 3. the evidence is not sufficient to justify a cancellation of the lease and forfeiture of the equipment; 4. lessees' objection to the competency of the testimony should have been sustained.

It is not necessary to trace the acquisition of the title to the land or to the lease by the parties in these actions, as it is admitted title to both came through Simpson McIntosh, who conveyed the land to J. D. Brandenburg in 1916, at which time there was an oil and gas lease on the land. That deed contained this reservation:

"The party of the first part hereby reserves the oil and gas rights on the within described land until abandoned by the oil and gas operations, when same is to revert to second parties."

By mesne assignments appellant, Mrs. Minnie Lynch, acquired the lease, but she did not remember the date she acquired it. She assigned a one-half undivided interest therein to the B. & B. Oil Company and the date of that assignment does not appear in the record, nor does the original lease.

The record does not show the exact number of wells on the lease; some of the witnesses testified there were five, some six, and others testified there were seven wells; but the production was light. Mrs. Lynch had the lines repaired, the engine overhauled and "acidized" the wells, all at an expense of over $1000. She pumped the wells as long as she could get a pumper. The power, or engine used to pump the wells, was stolen and the lease was not operated from 1943 until 1947. But operations had started again in the fall of 1947 just before these two suits were filed and seem to have precipitated them. The reason given for the lease having been shut

down for more than four years was that there was a great dearth of labor and oil well supplies during the war. However, it was shown that wells on leases adjoining the one in question were operated during all this four year interim, with the possible exception of one known as the Case Lease which was not operated at times.

Appellants insist their general demurrers to the petitions should have been sustained because they do not state causes of action as they merely aver the lessees had abandoned the lease, and this was but a conclusion of the pleader. We quote from the petition filed November 14, 1947, which after stating the wells on adjoining leases have been continuously operated for many years, averred "there have been no operations to produce oil and gas on the tract of land belonging to the plaintiffs aforesaid since about the ———— day of ——, 1943. * * * The plaintiffs state that when the defendants abandoned said oil and gas lease by failure to operate same, the entire interest in the oil and gas lease became the property of the heirs of J. D. Brandenburg". It is manifest the petition averred facts constituting an abandonment, hence the chancellor properly overruled the general demurrers.

Appellants urge that before appellees could maintain these actions they were required to give notice to them that the terms of the lease were not being complied with and if operations were not improved, the landowners would institute suit for cancellation of the lease and to have the equipment thereon adjudged the property of the lessors, citing such cases as Lawrence Oil Corp. v. Metcalfe, 266 Ky. 819, 100 S.W.2d 217; Young v. Dunn, 302 Ky. 232, 194 S.W.2d 378. An examination of these authorities discloses they are not cases where plaintiffs sought cancellation on the ground that the lessees had abandoned the leases, but were based on the theory that lessees were not diligently developing the leases. In such character of action we have consistently held that notice is a condition precedent to maintaining a suit. But here the actions are based on abandonment, and we expressly held in

American Wholesale Corp. v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S.W.2d 498, that notice is not required before a suit can be maintained to cancel the lease on the ground of abandonment. In Tanner v. Reeves, Ky., 249 S.W.2d 526, we cited with approval the F. & S. opinion. There can be no reason for notifying one who has abandoned a lease that suit will be filed. If he has abandoned it, he knows that fact and is entitled to no notice; while if lessee is only remiss or dilatory in the manner in which he is developing or operating the property, he is entitled) to notice that he must improve his operations, and should he fail to heed the notice, suit will be brought to cancel the lease.

Appellants' contention that the evidence is not sufficient to justify a cancellation of this lease is answered when appellees proved that appellants did not operate the lease for four years from 1943 to 1947. In Monarch Oil & Gas Co. v. Hunt, 193 Ky. 315, 235 S.W. 772, the lessee after drilling a producing well did nothing of consequence on it for more than one year, and we held that constituted abandonment. In Hodges v. Mud Branch Oil & Gas Co, 270 Ky. 206, 109 S.W.2d 576, lessee drilled a gas well and for lack of a suitable market did nothing more for a period of three years, and this court held the lease was abandoned. In the very recent case of Tanner v. Reeves, Ky., 249 S.W.2d 526, the power plant was destroyed by fire and not replaced and the lease was not operated for more than a year, and we held this constituted an abandonment of the lease. It is clear under these authorities that in the instant case the appellants abandoned the lease when they failed to operate it for more than four years.

Appellants insist the testimony of Johnnie Lane was incompetent. He stated John Lyle, a brother of Mrs. Miller and who had control of the lease for her when it was being operated, told him in 1947 the lease "was dead but I own the equipment". It is insisted that Mrs. Miller could not be bound by the statement of her agent acting without the scope of his authority. It is not necessary for us to decide this question

as there was ample evidence upon which the chancellor based his finding that the lease had been abandoned without considering this testimony of Lane.

The judgment is affirmed.