G. A. Amos, *Adm'r*, v. Azelia Livingston, *et al.*

1. Administration; *Burden of Proof.* When an application by an administrator for the sale of real estate is resisted on the ground that it is not the property of the estate, if the apparent legal title was in the decedent at the time of his death, the burden is on the party resisting to show that in fact the full equitable interest and title were in him; while, on the other hand, if the apparent legal title was then in the party resisting, the burden is on the administrator to show that some equitable title or interest in fact belonged to the estate.

2. ———— *Power of Court.* The court may refuse such an application, unless it appear, not only that some equitable title belongs to the estate, but also that such title is not a mere barren title, but one of actual substantial value—one whose sale may fairly be expected to realize something to the estate.

3. Sale of Mortgaged Property by Mortgagor *to Mortgagee.* There is no legal inhibition on a mortgagor selling the mortgaged property to the mortgagee in satisfaction of his debt; and where such a sale appears, and nothing unfair or unreasonable in its circumstances or conditions is shown by the party challenging it, it will be upheld, notwithstanding the ancient maxim, "Once a mortgage, always a mortgage."

*Error from Allen District Court.*

Application, by *Amos*, as administrator of the estate of Bayard Livingston, deceased, for the sale of certain real estate. This application, so far as it concerns one piece thereof, was resisted by the widow of decedent, and Paul Fisher. Judgment for defendants, at the November Term, 1880, of the district court. The plaintiff brings the case here. The opinion states the facts.

*E. A. Barber*, and *G. A. Amos*, for plaintiff in error.

*G. P. Smith*, and *Cates & Keplinger*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an application by the administrator of the estate of Bayard Livingston, deceased, for the sale of real estate. This application, so far as it concerns one piece of real estate, was resisted by the widow, Azelia Livingston, and Paul Fisher. On appeal to the district court, the following findings of fact and conclusions of law were made by the district judge:

1st. That on the 8th day of January, 1878, Dayton & Barber were owners of the land in controversy, described as the west half and southeast quarter of the southeast quarter of section thirty-four, township twenty-eight, in range nineteen, Neosho county, Kansas.

2d. That on said day the said Dayton & Barber contracted orally with one Bayard Livingston, by which the latter purchased from the former the said lands, at which time the said Livingston paid a valuable consideration therefor; and the said Dayton & Barber and their wives executed and delivered to said Livingston an instrument in writing purporting to convey by warranty deed the said land, which said deed did not designate or mention the name of any grantee, but was left wholly blank in that particular, and to be filled up or completed by the insertion of such name as grantee as the said Livingston should direct at some future time.

3d. That on the 16th day of March, 1878, the said Livingston borrowed from one Paul Fisher the sum of $106, for the period of 90 days, and secured the payment of the same by depositing with one Geo. Amos the said instrument in writing, together with another instrument in writing, of which the following is a copy:

"This deed left in escrow by Livingston for benefit of Paul Fisher, if one hundred and six dollars is not paid in 90 days, the deed to be filled out in name of Paul Fisher and delivered to him.
"March 16, 1868. BAYARD LIVINGSTON."

(There was a mistake in writing the date, in this, that it should have been 1878 instead of 1868.)

Default was made in the payment of the said sum of $106;

and afterward the said Fisher, in company with the said Livingston, went to the office of Geo. Amos, at which time and place, and in the presence of the three, the said deed, without inserting the name of any person as grantee, was delivered to said Fisher.

4th. Sometime in October thereafter, the said Livingston died, without having paid the sum of money borrowed as aforesaid, or any part thereof, or causing the name of any grantee to be inserted in the blank place left in said deed for that purpose, as hereinbefore referred to.   A few months after his death, his widow, Azelia Livingston, suggested to Fisher that she would like to obtain the title to said land, if she could do so by paying her deceased husband's indebtedness. Whereupon it was promised by Fisher that if she would "make him whole," *i. e.*, pay the original indebtedness, with reasonable interest thereon, he would have her name inserted in said deed and deliver it to her.   In accordance with this understanding she paid Fisher the sum of $115.   Fisher and she then went to the office of Dayton & Barber, caused the latter to insert the name of Azelia Livingston in the said deed as the grantee thereof, and the same was thereupon delivered to her by Fisher.

5th. Some time afterward she borrowed some money of Fisher, executing a deed of said land to him as security therefor; Fisher at this time executing a bond reconveying it to her upon paying the sum thus borrowed.

6th. That when Fisher loaned her said money, taking her deed to it as security, he had full knowledge of all the facts concerning the ownership and attempted transfer of said land as stated.

7th. That immediately after the death of Bayard Livingston, his widow, one of the defendants, Azelia Livingston, was appointed administratrix of his estate, and continued as such during all the time covered by the transaction hereinbefore mentioned that took place subsequent to the death of said Bayard Livingston.

As a conclusion of law, the court found as follows, viz.:

That the land mentioned and described in the finding of fact number 1 was not and is not subject to sale by the administrator for the payments of the debts of Bayard Livingston, deceased.

As none of the testimony offered on the hearing is preserved

in the record, the question comes before us for review simply upon the facts as found. The first thing that is apparent from these findings is, that the legal title to the property in question was not at the time of his death, and for that matter never had been, in the decedent. Under those circumstances we think the burden of proof rests on the admin-

1. Administration; burden of proof.

istrator. Whenever, at the time of his death, the legal title to any real estate is in the decedent, the administrator may rightfully treat it as his property, and if necessary for the payment of debts, petition for its sale. The legal title being thus vested, whoever challenges his right to sell may fairly be charged with the burden of proof; but on the other hand, when the legal title was not in the decedent, and the administrator seeks to subject to the payment of decedent's debts property which apparently belonged to another, upon him rests the burden of proof to show that the decedent had an interest in such property.

While according to the theory which plaintiff insists should, control this case the findings show that decedent had some equitable interest in the land, it nowhere appears what the value of such interest was, or indeed that it had any real substantial value. True, it is said that he paid a valuable consideration for it, but the amount of such consideration is nowhere stated, nor is the value of the land given; for aught that appears, the amount paid may not have exceeded the sum loaned by Fisher, and the value of the land may not have equaled this loan, and while courts will protect an equitable

2. Power of court.

interest, yet it should appear that such interest has some real substantial value. It would be trifling with justice, a gross disregard of the principles which control equitable actions to attempt to disturb a legal title, or subject an equitable interest to sale, when such interest was a mere barren interest, and would produce nothing but a useless expense. The burden was on the plaintiff to show that this equitable interest, if any existed, was possessed of some real substantial value, an interest whose sale would produce something to the estate.

Still again, while it is true that "Once a mortgage, always a mortgage," is a maxim of recognized force and application, yet this maxim does not prevent a mortgagor from at any time selling the mortgaged property to the mortgagee in satisfaction of the debt. True, courts will scan such a transaction carefully, in order to prevent any unjust and unfair advantage being taken of the necessities of the borrower; but on the other hand, when such a sale is shown it will be upheld, unless it appears that by so doing some unconscionable wrong is done, and he who challenges such a sale must show the wrong. Mortgagor and mortgagee have the unquestionable right to deal with the property and the debt as they deem best, subject only to the condition that no unjust and unfair advantage is taken. Now it is evident from the third finding, that the parties on the maturity of the debt intended to settle it by a sale of the property, and supposed they had done so. No other reasonable interpretation can be given to their conduct. The deed had been placed in escrow at the time of the loan, with the stipulation that if the loan was not paid at maturity the blank of the deed should be filled with the name of the lender, as grantee, and the deed delivered to him. After the maturity of the loan the parties went to the person in whose possession the deed had been left, and the name of the grantee being still a blank, the deed was taken and delivered to the lender. Obviously the parties intended by this that the lender should take the land in satisfaction of the debt, and there is nothing in the findings to show that such transaction was not fair and reasonable to both parties. There remained no debt whose collection could be enforced against Livingston, and Livingston had no title, legal or equitable, to the land. The subsequent transactions between Fisher and Mrs. Livingston in no manner changed the effect of this settlement. It does not appear that the money which she paid to him belonged to the estate, or was other than her separate property. The fact that she was an administratrix in no manner prevented her from purchasing property in her own right, and paying for it out

*3. Sale of mortgaged property by mortgagor to mortgagee.*

of her separate estate. Neither the heirs nor creditors could claim any benefit of such a transaction.

For these reasons, we think the ruling of the district court was correct, and it must be affirmed.

All the Justices concurring.