Argued February 16; affirmed May 31; rehearing denied
September 26, 1933

ANDERSON *v.* GUENTHER ET AL.

(22 P. (2d) 339, 25 P. (2d) 146)

*Lida M. O'Bryon,* of Portland, for appellant.

*Philip Hammond,* of Oregon City (Chamberlain, Thomas, Kraemer & Powell, of Portland, on the brief), for respondents.

ROSSMAN, J. This is a suit, maintained pursuant to the provisions of section 6-1001, Oregon Code 1930, to quiet title to a tract of land of which the plaintiff claims to be the owner. From a decree in favor of the defendants the plaintiff appealed.

The uncontroverted facts are: Some time prior to June 30, 1926, the plaintiff came into ownership of the parcel of real property involved in this proceeding. April 12, 1926, she, together with two other persons, signed a promissory note in the sum of $300 payable to Daniel Guenther, who is one of the defendants in this suit. That note was not paid at its maturity. June 30, 1926, Guenther instituted an action

upon it, later obtained judgment, still later secured a writ of execution which was levied upon this parcel of real property and, upon the execution sale, purchased the property. The regularity of the service of the summons in that action is the sole issue in this suit. Plaintiff, who was one of the defendants in that action, was not personally served with the summons. Service was made by publication. We shall now take note of the irregularities upon which she depends to sustain this suit. The complaint in that case named Emma Rummy as one of the defendants, whereas this plaintiff's name is Emma Running (now Emma Anderson). This error in setting forth the plaintiff's name was apparently due to the fact that her signature upon the note was so illegible that it was mistaken for Emma Rummy. After the complaint had been filed Guenther filed an affidavit preliminary to procuring a writ of attachment. It also named Emma Rummy as the party defendant. The affidavit did not aver that the debt for which action was brought was not secured by a mortgage, lien or pledge, and did not allege that the defendant was a nonresident. Upon the same day Guenther filed an undertaking on attachment for the appropriate sum, but in the qualification of the sureties they swore: "I am worth ——— dollars over and above all just debts * * *" but failed to state the amount. Both the bond and the writ of attachment named Emma Rummy as the party defendant. August 16, 1926, the sheriff made his return in which he referred to our present plaintiff thus: "Emma Running, also known as Emma Rummy". This certificate stated that the sheriff had executed the writ by attaching the property now in controversy. The plaintiff claims that the attachment was invalid because "fifteen acres of land just outside the

city of Portland was attached for a $300 note and was an illegal and excessive levy''. August 16, 1926, the sheriff filed his certificate of attachment. In its caption he entered our present plaintiff's name thus: "Emma Rummy, also known as Emma Running, defendant". It also stated that the property now in controversy had been attached. Plaintiff asserts that this return was defective because (according to her) it "does not show that he attached any property belonging to Emma Running and he made an illegal and excessive levy''. The return, however, states that the sheriff attached ''property in the name of Emma Running''. August 17, 1926, the court made an order from which we quote the following: "It appearing to the court that the defendant named in plaintiff's complaint as 'Rummy' true and correct name is 'Running' and that said defendant has not as yet been served with summons and complaint. It is therefore ordered that plaintiff may amend his complaint by interlineation, substituting the word Running wherever the name Rummy appears in said complaint''. The summons throughout described Emma Running by her true name. November 5, 1928, the sheriff made his return, certifying that he had been unable to find Emma Running. November 14, 1928, an affidavit for publication of summons was filed in which this plaintiff was named in the caption thus : ''Emma Rummy, sometimes known as Emma Running, defendant''. This affidavit is, in part, in the third person and, although it shows that an extensive search had been made to find Emma Running, no inquiry apparently was made at No. 1188 East 14th Street North, which is the address set opposite the name of Emma Running in the promissory note. The affiant swore that he had been unable to

find Emma Running. Thereupon an order was made for the publication of the summons. The summons, with our present plaintiff's name appearing as Emma Running, was published and proof of that fact was filed December 18, 1928. The affidavit showing mailing of the summons somehow became lost and a duplicate was filed December 14, 1930, pursuant to an order of the court granting permission to do so. The affidavit does not state the time when the summons was mailed. December 18, 1928, the default of Emma Running was entered, and upon the same day the court granted judgment in favor of Guenther against Emma Running and her two co-defendants after having entered findings of fact and conclusions of law in conformity with the complaint. March 5, 1929, the writ of execution was issued. April 8, 1929, the writ was levied on the tract of land above mentioned, and subsequently the property was sold. April 25, 1929, the sale was confirmed by order of the circuit court.

November 18, 1930, Emma Running filed in the case which we have been reviewing a motion in which she moved "for an order setting aside the judgment rendered in said proceedings, setting aside the execution issued on said judgment, the confirmation of sale made under said execution and recalling and cancelling the deed issued by the sheriff based upon the sale under said execution, for the reason that the files in said proceedings show that the court had no jurisdiction to render judgment in said case, and for the further reason that the proceedings in said cause show on the face thereof that no service was ever made upon said defendants or any of them". This motion was sustained by an order of the circuit court entered November 28, 1930. Subsequently, upon motion of the plaintiff in

that case (Daniel Guenther), the court vacated that order. December 26, 1930, Emma Running filed the following motion: "Comes now the above-named defendants and moves the court for an order setting aside the judgment entered in the above entitled action for the following reasons: (1) there has been no service made on the defendant Emma Running, it appearing from the record thereof that no allegation appears in said affidavit for publication entitling the said service, and for the further reason that it appears from the files of said action that no mailing was ever made to the last post office address of said defendant, as required by law; (2) there has been no proper service made on the defendant S. Johnson; (3) the said judgment was taken by the said plaintiff after the express agreement of said plaintiff that no judgment would be entered in said cause without notice, that no such notice was ever given; (4) the plaintiff herein accepted property in settlement of said note before the entry of said judgment and same was fully and completely paid". Attached to this motion were some affidavits and a pleading bearing the caption of the cause and entitled "Answer". It was under the oath of Emma Running. After denying all of the averments of the complaint, it alleged lack of consideration and averred payment. This motion was never disposed of by the court. January 22, 1932, Emma Running applied to the court for leave to file an amended motion, and on January 23, 1932, she submitted to the court an amended motion to set aside the judgment "for the reason that the court never had jurisdiction of the property nor of the person of Emma Running * * * that said judgment was taken by the plaintiff after the express agreement of said plaintiff that no judgment would be entered in

said cause without notice; that no such notice was ever given; that plaintiff herein accepted property in settlement of said note before the entry of said judgment and same was fully and completely paid as shown by the affidavit of Ben Lindeas * * *''. No disposition was ever made by the court of this motion.

February 18, 1931, the present suit was instituted. The complaint makes no mention of the proceedings in the above mentioned action, but after the answer had plead the above mentioned judgment and the execution sale thereunder, with title in the defendant Guenther as a result thereof, the validity of Guenther's judgment became the sole issue in the case through the denials and averments of the reply.

It will be observed from the two above mentioned motions that neither states that Emma Running limited her appearance to the sole purpose of contesting the alleged service of the summons. The first motion, in addition to contending ''that no service was ever made upon said defendants'' contends: ''The files in said proceeding show that the court had no jurisdiction to render judgment in said case'' which might mean that the court had no jurisdiction over the subject-matter of the controversy. The second motion, after reciting ''There has been no service made on the defendant Emma Running'' contends that the judment was taken in violation of an agreement that no judgment would be entered ''without notice, and that no such notice was ever given''. Next, it submits: ''The plaintiff herein accepted property in settlement of said note before the entry of said judgment and same was fully and completely paid''.

■ This court has held many times that a general appearance, even though the service was defective,

waives the irregularties of service and confers jurisdiction upon the court as effectively as technically correct personal service. Our decisions have also pointed out that any action upon the part of the defendant before the court, except a contest by him of the service of summons, which recognizes the cause as before the court constitutes a general appearance. The following citations, we believe, fully support the above statements: *Herrick v. Wallace,* 114 Or. 520 (236 P. 471); *Duncan Lbr. Co. v. Willapa Lbr. Co.,* 93 Or. 386 (182 P. 172, 183 P. 476); *Spores v. Maude,* 81 Or. 11 (158 P. 169); *Sit You Gune v. Hurd,* 61 Or. 182 (120 P. 737, 120 P. 1135); *Whittier v. Woods,* 57 Or. 432 (112 P. 408); *Belknap v. Charlton,* 25 Or. 41 (34 P. 758); *Kinkade v. Myers,* 17 Or. 470 (21 P. 557). See also *Amos v. Livingston,* 26 Kan. 106. It seems evident that the plaintiff appeared in the first action, not for the mere purpose of contesting the validity of the service but for the purpose also of submitting to the court that the obligation mentioned in the complaint had been satisfied by payment. We, therefore, conclude that she waived the irregularities of service and submitted herself to the jurisdiction of the court. Accordingly, we have a situation where the plaintiff, whether regularly served or not, appeared in the first case, attacked the judgment with the same contentions which she urges in this suit, and sought the same relief which she now seeks. The question is, may she do so.

In *Thompson v. Connell,* 31 Or. 231 (48 P. 467, 65 Am. St. Rep. 818), we applied the principle that if a law court which has rendered judgment against a party who is now seeking the aid of equitable relief against the judgment, has sufficient power to grant relief against the judgment, and if the party has moved the law court

for such relief, he cannot abandon his efforts there and then seek the aid of the equity court. In that case one Thompson sought an injunction to prevent another individual named Connell from enforcing a judgment on the ground that Connell had taken judgment after having induced Thompson, by false representations, to refrain from interposing an answer. The decision pointed out that our statutes permit anyone against whom a judgment has been entered through mistake, inadvertence, or excusable neglect to apply to the court for an order to set aside the judgment. Thompson made such an application, but relief was denied to him by the law court. No appeal was taken. In holding that the suit in equity could not be maintained, this court said:

"We hold, therefore, that the statute having provided the plaintiff with a remedy in the original action, competent for the purpose, and he having therein invoked it, he is now precluded from invoking equitable relief of like character based upon grounds identical with those there employed. The tendency of modern legislation and practice has been to greatly abridge the necessity for resort to equity by amplifying and enlarging the remedies in courts of law for many of the exigencies which formerly called for equitable interposition, and while the jurisdiction may in some instances remain concurrent with that given at law, it cannot ordinarily be invoked when the remedy at law has been employed either with or without avail."

*George v. Nowlan,* 38 Or. 537 (64 P. 1), was a suit by George and others to impeach a decree and to enjoin the delivery by the sheriff of a deed consummating the foreclosure of a mortgage. Two of the defendants had been personally served with summons in the foreclosure suit and a third had been served by publication. In the new suit these three individuals were the plaintiffs, and contended that the foreclosure decree was

void because the court had entered judgment for $500 more than the amount prayed for, and also because the affidavit for the order of service of summons by publication upon the third individual was defective, and the summons as published was insufficient. In holding that the suit could not be maintained, the decision pointed out that the plaintiffs did not contend that the foreclosure decree had been fraudulently obtained, and likewise did not contend that the plaintiffs had been prevented from defending in the previous suit through excusable neglect, mistake or accident. We now quote from the decision:

"It is admitted that the court rendering the decree had jurisdiction of the subject-matter and the parties, and it is a well-settled rule that a court of equity will not enjoin such a decree for errors or irregularities; for, as said by the editor of the American State Reports, in an exhaustive note on the subject: 'Courts of equity do not exercise a revisory jurisdiction in proceedings to enjoin judgments or other decisions, but interpose only when, from some cause not attributable to the fault of the complainant, he was not able to present his cause of action or of defense to the court or tribunal having jurisdiction of it, and his inability to so present it has resulted in his injury. In every case in which application is made to a court of equity by an independent suit for relief against a judgment or other decision, it is incumbent on the complainant to establish (1) that he has lost a cause of action or of defense or some part thereof; (2) that such loss occurred either because the court in a former proceeding or action was not competent to hear it and to grant relief thereupon, or because he was prevented from presenting it or having it properly considered, either through fraud, accident, mistake or some other sufficient ground for the interposition of equity; and (3) that unless he secures relief in equity he will be without any adequate remedy'."

The decision held that the third defendant was not in a position to contest the regularity of the service by publication because the order for the publication of summons constituted a determination that the affidavit and summons were regular. The decree of the circuit court dismissing the suit was, therefore, affirmed. In *Miller v. Shute,* 55 Or. 603 (107 P. 467), the plaintiff sought an injunction to restrain the enforcement of a decree. It appeared that the decree had been entered by the circuit court four years after the case had been tried and after the pleadings had been lost from the files. When the decree was entered neither the original pleadings nor any copy thereof had been restored to the files, and the court was compelled to rely upon its hazy recollection of the issues. However, after the decree had been entered the defendant moved to vacate it and, while that motion was pending in the circuit court, instituted the new suit. In holding that the new suit could not be maintained, our decision regarded the first decree as "voidable, if not void". We then considered whether such a decree was subject to collateral attack under the circumstances above stated. We now quote:

"Treating this as a mere irregularity, rendering the decree voidable, no legal foundation is furnished for relief by an independent suit to set it aside, or enjoin its enforcement; for 'it is well settled that where a court in which a judgment or decree is rendered has jurisdiction of the subject-matter and of the parties, equity has no jurisdiction to enjoin such judgment or decree for errors or irregularities in the proceedings leading thereto or in the judgment or decree itself, and it is altogether immaterial that the judgment or the decree was unjust or that the error was such as to warrant a new trial.  *  *  *'  But, considering the decree as void, for the reasons alleged as contended by

plaintiff, the court rendering it has the power to vacate it (Conant's Estate, 43 Or. 530, 73 P. 1018) and the plaintiff herein, having invoked the power of that court by motion, under section 103 B. and C. Comp. which by section 396 is made applicable to suits in equity, he is bound to pursue that remedy to a final determination, which is complete and ample, and is a bar to a suit in equity for the same relief on the same ground.''

Relief was denied. *Nicklin v. Hobin,* 13 Or. 406 (10 P. 835), was an appeal from a decree of the circuit court which had perpetually enjoined the appellant from enforcing the collection of a judgment for $62.95 costs. The plaintiff contended that the cost judgment was without foundation in law. However, he had moved the circuit court for an order to vacate it and to quash a writ of execution based upon it. The motion, however, had never been heard by the circuit court. In reversing the decree of the circuit court, our decision pointed out that the judgment was not absolutely void, and that since the plaintiff could obtain a review of the original judgment by the process of an appeal, if his motion to vacate it was denied, a court of equity was without jurisdiction to grant relief. *Herrick v. Wallace,* 114 Or. 520 (236 P. 471), was a suit to obtain an order cancelling the satisfaction of a judgment. Five years after that judgment had been obtained the judgment-debtor moved the court for an order requiring the judgment-creditor to satisfy the judgment. Since the judgment-creditor was outside of the state the court, in an order, directed the manner in which the motion should be served upon him. The service was not made in the manner specified in the order. Later the motion was allowed and the clerk was directed to enter a satisfaction. Still later the judgment-creditor filed an appearance and asked the court to vacate the

order cancelling the judgment. The motion was denied. Then this suit was instituted, resulting in a decree in favor of the defendants. In sustaining that decree, this court employed the principles of law reviewed in the above citations. Other courts have employed the same principles: Pomeroys Equity Jurisprudence (2d Ed), p. 4649; 15 R. C. L., Judgment, p. 746, § 199, and p. 738, § 193; 51 C. J., Quieting Title, p. 147, § 21.

Reverting now to the facts of the instant case, we find that the plaintiff made a general appearance in the former action; that she filed three motions to vacate the judgment entered against her in that action, one of which was allowed and the other two of which are still pending in the circuit court; and we also find, as clearly we must, that the circuit court's power to relieve the plaintiff from the judgment, if the judgment is erroneous, is as complete in the law action as it is in this equity suit. The law action clearly made the plaintiff's title in the land the subject-matter of attack because it made the plaintiff's interest in that land virtually the defendant in the proceeding. It seems obvious that this suit cannot be maintained. The plaintiff has an adequate remedy at law.

We believe that before concluding this decision we ought to add that the present counsel for the plaintiff is not the one who represented her in the preliminary proceedings.

It follows from the above that the decree of the circuit court is affirmed.

BELT and KELLY, JJ., concur.

RAND, C. J., did not participate in this decision.

Petition for rehearing denied September 26, 1933

## On Petition for Rehearing
### (25 P. (2d) 146)

ROSSMAN, J. The petition for a rehearing presents new argument and many additional citations in support of plaintiff's (appellant's) contention that the circuit court erred when it dismissed her complaint.

■■ Plaintiff seems to doubt the circuit court's authority to grant her any relief whatever in the law action. Apparently she believes that the circuit court has lost control over the judgment, and hence cannot vacate it. It will be recalled that the judgment was rendered December 18, 1928, and that her motion to vacate it was filed November 18, 1930. The record does not disclose the specific day upon which the plaintiff (the defendant in the law action) claims that she, for the first time, acquired knowledge of the existence of the judgment against her. As stated in our previous decision, her motion was predicated upon the contention that the efforts of the plaintiff in the law action to obtain service of summons by publication were fatally defective. If these contentions are true, the aforementioned judgment is void, and it was the duty of the circuit court to vacate it, even though the term in which it was rendered had expired, and even though more than a year passed after the entry of the judgment and before she filed her motion. Section 2-1507, Oregon Code 1930; *Finch v. Pacific Reduction Etc. Co.*, 113 Or. 670 (234 P. 296). We also call attention to the fact that, by virtue of section 1-907, Oregon Code 1930, which confers a discretionary power upon courts to relieve parties from judgments taken against them through their mistake, inadvertence, surprise or excusable neglect, the one-year period of time within

which the court may grant relief starts at the time when the judgment-debtor discovers the judgment, and not at the time of its entry. *Chapman v. Multnomah County,* 63 Or. 180 (126 P. 996); *Evans v. Evans,* 60 Or. 195 (118 P. 177); *Fildew v. Milner,* 57 Or. 16 (109 P. 1092). In our previous decision we affirmed the conclusion of the circuit court in which it held that the plaintiff's appearance was not a special one, but a general one. We took the view that if the substituted service was a nullity, the action was still pending in the circuit court when the plaintiff filed her motion, and that, her appearance being general, she conferred upon the court jurisdiction to proceed with the disposition of the cause. We are of the opinion that the circuit court had jurisdiction to entertain the plaintiff's motion.

■ Next, the plaintiff argues that section 6-1001, Oregon Code 1930, which authorizes the maintenance of a suit to remove a cloud from a title, permits the owner of real property to maintain such a suit even though he has a plain, speedy and adequate remedy at law. In support of this contention, she states that this section of our laws was enacted at the same time that section 6-101, Oregon Code 1930, was enacted, which makes provision that the rights therein mentioned may be enforced by a suit in equity if the party has no plain, adequate and complete remedy at law. She argues that section 6-1001 is specific, that section 6-101 is general, and that, therefore, the former is not controlled by the latter. Section 6-101 was section 376, General Laws of Oregon, 1862. Section 6-1001 came into our laws as 1899 Session Laws, page 277. The essence of plaintiff's argument was before this court in *State of Oregon v. Warner Valley Stock Co.,* 56 Or.

283 (106 P. 780, 108 P. 861), and we there held that
relief in suits of this character "is a subject of general
equity powers of the court which existed prior to and
independent of section 516, B. & C. Comp. [now sec-
tion 6-1001, Oregon Code 1930], authorizing suits to
quiet title". Continuing, the decision pointed out that
suits of this character can be maintained only where
the remedy at law is not adequate. We dismiss this
contention as lacking merit.

■ Plaintiff next contends that in the law action
mentioned in our previous decision the court lacks au-
thority to set aside the sheriff's deed to the defendant,
and that, therefore, the maintenance of this suit is nec-
essary if the plaintiff is to have an adequate remedy.
The certificate of sale was issued to the defendant,
Daniel Guenther, and, according to the pleadings, the
title is now vested in him and Sophia Guenther, his
wife. The answer does not allege that Sophia Guenther
parted with any value for her interest, nor does it
aver that whatever interest she may have was acquired
without knowledge of all attendant circumstances. As
we have seen, the circuit court possesses authority in
the law action to vacate the present judgment, if it
should be satisfied that a judgment for the plaintiff is
not warranted, and enter one for the defendant. If
such is done, the foundation for the sheriff's deed has
been removed, and, as is held in the numerous decisions
cited in 29 A. L. R. 1078, the defendant's title to the
property in controversy is ended. We quote the follow-
ing from the decision of the Circuit Court of Appeals
for the ninth circuit in *Hays v. Sound Timber Co.*, 261
Fed. 571 (29 A. L. R. 1067):

"* * * One of the appellee's affirmative de-
fenses was the vacation of the judgment and sales in
the state superior court under which the appellant

claims title. It is the general rule, and it has been so held in the state of Washington, that, where the execution plaintiff is purchaser, the vacation or reversal of the judgment operates to vacate the sale as between the parties. 17 Cyc. 1310; Benney v. Clein, 15 Wash. 581, 46 P. 1037.''

The following excerpt taken from *Webb v. Webb's Guardian,* 178 Ky. 152 (198 S. W. 736), further illustrates the power of the court when it vacates a judgment pursuant to which an execution sale has occurred:

'' * * * The hard and inflexible rule, above stated, has been changed, to the extent, that, if the purchaser at a judicial sale, either under execution or a decree, is a party to the record, who procured the erroneous judgment, or his attorney, or assignee before the sale, when it is reversed upon appeal, if the property sold is in the hands of such party, he may be required to make restitution of the property, and if not, he can be made liable for its value or at least all, which he received from the sale. Cavanaugh v. Wilson, 108 Ky. 759; Hess v. Deppin, 101 S. W. 362. The modification of this rule, also, permits an infant, when his land has been sold under an erroneous judgment, and upon appeal by him, the judgment, under which the property was sold, is reversed, if the purchaser of the land was the plaintiff, or a party to the action, or an attorney engaged in it, or an assignee of the judgment, the order confirming the sale will, also, be reversed, and a restitution of the property, if desired by the infants, or they may elect to let the sale stand and receive the proceeds of the sale. * * *''

It is true that the Kentucky court spoke of a reversed judgment, but we believe that the same results follow a vacated executed judgment as a reversed one. *Benney v. Clein,* 15 Wash. 581, and Freeman on Judgments (5th Ed.), § 297.

■ It will be observed that the orders vacating the judgment, the sale, and the confirmation of sale will appear in the same record as the one out of which the sheriff's deed emanated. This court, in harmony with the general rule (Pomeroy's Equity Jurisprudence (2d Ed.), § 2155; Story's Equity Jurisprudence (14th Ed.), § 948), has declared that equity will not grant relief in a suit of this character where the invalidity of the questioned instrument appears upon its face, or is conclusively established by matters of record; in other words, our decisions have regarded as a cloud upon title a document which is apparently valid, but in fact, without foundation and is, therefore, capable of injuring the marketability of the title. *Crim v. Thompson,* 98 Or. 599 (193 P. 448); *Richards v. Mohr,* 73 Or. 57 (143 P. 1102); *Deckenbach v. Deckenbach,* 65 Or. 160 (130 P. 729). Appellant cites *Lockett v. Hurt,* 57 Ala. 198, in support of her contention that a court of equity will remove as a cloud upon title a sheriff's deed, even though the judgment which supported it has been set aside. In that case the court pointed out that the evidence of the invalidity of the deed was not a part of the record in the law action out of which the deed has its inception. We quote from the decision the following:

"The judgment vacating the sale is not a part of the record of the judgment under which the lands were sold. It is a new, distinct, independent judgment rendered in a new proceeding, having different parties, a different subject-matter, operating differently, and the subject of an appeal which would not open an inquiry into the judgment under which the lands were sold."

If an instrument, in the possession of another, injures a title, depreciates the market value of the prop-

erty, and is of such mischievous character that a prospective purchaser would hesitate to purchase, we believe that business sense compels the conclusion that the instrument is a cloud upon the title and that equity ought to decree relief. Such a view was, in fact, expressed in *Mount v. McAuley,* 47 Or. 447 (83 P. 529). See, also, Pomeroy's Equity Jurisprudence (2d Ed.), § 2156. However, we cannot perceive how the sheriff's deed could any longer embarrass this plaintiff, in the event that the circuit court, in the law action, vacates the present judgment, enters one in favor of the plaintiff, vacates its order confirming the sale, and grants such further relief as is within its power.

■ The power of the circuit court, when it vacates an erroneous judgment, is not limited to orders which merely expunge records. The power to vacate an erroneous judgment is only a part of the power to restore the parties litigant to the same condition in which they were prior to the abuse of the process of the law. To restore that condition is primarily the duty of the court which entered the erroneous judgment and issued the writ of execution. Justice is not administered piecemeal, and in this day, when the distinction between the law and equity powers of our courts has been virtually eliminated, there can exist but slight occasion for passing a litigant from court to court before he has secured complete relief. We are of the opinion that if the circuit court which granted judgment in the law action should conclude that the judgment was erroneous, it can so administer relief under a writ of restitution as to make it clear that the sheriff's deed is void. *Coker & Bellamy v. Richey,* 108 Or. 479 (217 P. 638). It is true that, in the case just cited, we were concerned with restitution after an executed judgment

of the circuit court was reversed, but, as we have already indicated, we know of no reason why a distinction should.be made between the developments which follow the reversal of a judgment and those that follow the vacation of one. The manner in which a law court may exercise its power of restitution is stated in Freeman on Judgments (5th Ed.), § 1177. The writer cites numerous decisions wherein the power of restoration was exercised in instances involving real property sold upon a writ of execution. See, also, the authorities collected in 10 R. C. L., Execution, p. 1233, and 29 A. L. R., p. 1078. We know of no reason why the circuit court, in the event that it should vacate or reverse its present judgment, cannot exercise this and its other powers in a manner which will be as effective as if the plaintiff maintained her present suit and eventually obtained a decree.

It follows from the above that we remain satisfied with our previous decision, and hence the petition for a rehearing is denied.

BELT and KELLY, JJ.; concur.

RAND, C. J., did not participate.