Matson B. Hill and Jean Patterson Hill, Appellees, v. 1550 Hinman Avenue Building Corporation et al., Defendants. 1550 Hinman Avenue Building Corporation et al., Appellants.

Gen. No. 37,896.

110

Opinion filed November 5, 1935. Rehearing denied and additional opinion filed November 22, 1935.

McGilvray, Eames, Vaughan & Tilley, of Chicago, for appellants; Franklin E. Vaughan, of counsel.

Poppenhusen, Johnston, Thompson & Cole, of Chicago, for appellees; James W. Hyde, Anan Raymond and Henry G. O'Donnell, all of Chicago, of counsel.

Mr. Presiding Justice Scanlan delivered the opinion of the court.

Plaintiffs filed their complaint to set aside as clouds upon their title to certain premises a 99-year lease, certain assignments thereof, and trust deeds, judgments and mechanics' lien claims derived from or claimed through the lease, and to obtain other relief under the lease. 1550 Hinman Avenue Building Corporation (hereinafter also called Corporation), Frank W. Cauley and Rosalie Hill Cauley, defendants, appeal from an order entered denying their motion to dismiss the complaint and from the decree entered in the case.

The complaint alleges that plaintiffs are the owners in fee simple of certain premises (describing same) and in possession thereof; that on May 12, 1926, they and Libbie B. Hill, the then owners of the premises and in possession thereof, leased the same to Morris E. Feiwell, defendant, and the lease was duly recorded; that on November 28, 1928, Feiwell assigned the lease to Frank W. Cauley, which assignment was duly recorded; that on November 30, 1928, defendants Frank W. Cauley and Rosalie Hill Cauley, his wife, executed a trust deed to Chicago Title and Trust Company, as trustee, mortgaging their interest under the lease to secure the payment of three notes (describing them), which deed was duly recorded and has never been released, canceled or satisfied of record; that on February 11, 1929, Cauley assigned the lease to defendant Corporation, which assignment was duly recorded; that on May 13, 1929, defendant Corporation conveyed to Chicago Title and Trust Company, as trustee, by its trust deed or mortgage, "the right and interest of the Lessee under and by virtue of the said . . . Lease," to secure two certain notes, which instrument was recorded and has never been released or canceled of record; that on May 14, 1929, defendant Corporation executed and delivered its trust deed or mortgage to Chicago Title and Trust Company, mortgaging the interest of the lessee under the lease, to secure the indebtedness of the grantor in the principal sum of $51,308.34, which trust deed was made subject to the trust deed executed May 13, 1929, and which second trust deed was recorded and has never been released or canceled of record. The complaint recites certain covenants in the lease that obligated the lessee to construct, before June 1, 1931, at his own expense, a building not less than 10 stories in height and to cost not less than $125,000, to pay rent, to pay taxes, and to deposit with the Northern Trust Company certain

funds to secure the lessors in the performance of the contract by the lessee; alleges the default of defendants in the performance of the said covenants; alleges that defendants commenced the construction of the building and that when the work had progressed to a point where the excavations and foundations of the building were nearly completed, they abandoned the premises and the work, in September or October, 1929; alleges the appearance of record of certain mechanics' lien claims and judgments which were derived from and constituted liens against only the leasehold interest; alleges defaults in the payment of instalments of rent due under the lease; alleges that on March 6, 1934, plaintiffs gave to defendants a notice in writing of said defaults, and that after the defaults had continued for 60 days after service of the notice of default it became lawful for plaintiffs to declare the term of the lease ended, to re-enter the premises and the buildings thereon, to expel all occupants, and to repossess the buildings thereon *"without such reentry and repossession working a forfeiture of the rents to be paid and the covenants of said lease to be performed during the term of said lease"*; that about May 8, 1934, plaintiffs declared the lease and the term demised ended, re-entered the premises and put out its occupants, including defendants, and repossessed the premises, and now possess them; that by reason of the defaults plaintiffs are now the absolute owners in fee simple of the real estate, etc., and in possession of the same, free and clear of any and all right, title, interest, lien, claim, demand, incumbrance or cloud on account of, in connection with, or arising from the lease, and any mortgages, conveyances, deeds of trust, claims of lien or other instruments, whether appearing of record, or otherwise, in any manner derived from or claimed by virtue of the lease or arising by any act of defendants Feiwell, Cauley or Corporation, or any person claiming through or under said defendants; that the

amounts due plaintiffs as lessors are greatly in excess of the cash and market value of the securities now in the hands of defendant Northern Trust Company, "as Trustee of Securities under said . . . Lease," and that plaintiffs are therefore entitled to have delivered to them all cash and securities on deposit with that company, which should be ordered to transfer and deliver to plaintiffs said cash and securities, to be applied by plaintiffs in partial reimbursement of the loss occasioned them by the defaults of said defendants in the performance of the terms and covenants of the lease; that notwithstanding the foregoing, the lease, assignments, trust deeds, claims for liens, judgments and interest of the directors and stockholders of defendant Corporation, "by reason of the same appearing of record . . . , are clouds upon the plaintiffs' title in fee simple in and to said premises and tend to depreciate the value thereof; and ought, therefore, to be set aside, *to be declared null, void,* terminated and at an end, and to be delivered up to be canceled under the direction of this Court," and prays that defendants be required to answer; "that the plaintiffs be decreed to be the absolute owners of said real estate and appurtenances thereto free and clear of any and all claims or interest therein of the defendants hereto and entitled to possession thereof as against the defendants and each and all of them"; that the instruments appearing of record (describing them in detail) be set aside and declared null, void, terminated and at an end, as against plaintiffs, as a cloud on their absolute title in fee simple in and to said real estate and appurtenances, and that the same may be delivered up to be canceled under the direction of the court; that defendants be ordered to execute and deliver such quitclaim deeds, releases, etc., as should be necessary to remove from plaintiffs' title any apparent right, title, etc., appearing of record, and that on their failure "to execute and deliver said instruments, that the court designate and appoint

a commissioner for the purpose of executing and delivering the same; that the defendants and each of them and all persons, firms and corporations claiming by, through or under the said defendants be forever barred and enjoined from having, claiming or asserting any right, title, interest, lien, claim, demand, encumbrance or cloud in or to the said real estate and appurtenances or against the absolute title in fee simple and right of possession of the plaintiffs therein and thereto''; that the Northern Trust Company be directed to deliver all of the cash and securities remaining on deposit in its hands to plaintiffs, and that plaintiffs may have such other and further relief in the premises as may be equitable. The lease, dated May 12, 1926, is attached to the complaint and made a part thereof.

Defaults were taken against numerous defendants. Several defendants, including the original lessee, Feiwell, disclaimed. Chicago Title and Trust Company, the trustee under the several trust deeds, answered.

Defendants 1550 Hinman Avenue Building Corporation, Frank W. Cauley and Rosalie Hill Cauley (hereinafter called appellants), on June 15, 1934, filed the following motion:

## "MOTION TO DISMISS

"Now come the defendants, 1550 Hinman Avenue Building Corporation, a corporation, Frank W. Cauley and Rosalie Hill Cauley, and move for judgment against the plaintiffs because the complaint is substantially insufficient in law, and specify the following respects:—

"(1) That the instruments enumerated and specified . . . are not such instruments as constitute clouds upon the title of the plaintiffs within the meaning of the statutes and decisions of the State of Illinois, in reference thereto, nor does any one of such instruments constitute such a cloud and that this Court has

no jurisdiction to declare said instruments, or any one of the same, null, void, terminated and at an end, as against the plaintiffs, as a cloud upon the title of the plaintiffs.

"(2) That this Court has no power or authority to order and direct the defendants to said complaint to execute and deliver to the plaintiffs Quit Claim Deeds, conveyances, releases, satisfaction pieces and other instruments . . . and has no power to designate or appoint a commissioner for the purpose of executing and delivering the same.

"(3) That it appears from said complaint that there are certain funds and securities on deposit with The Northern Trust Company, in accordance with the terms of the ninety-nine year lease referred to in said complaint, in which these defendants have an interest and that it further appears from said complaint that this defendant, 1550 Hinman Avenue Building Corporation, has constructed and placed on the premises described in said complaint, certain valuable improvements and that said complaint contains no offer to do equity in relation to said funds and securities on deposit with The Northern Trust Company, or in connection with and in reference to said valuable improvements so placed upon said land.

"(4) That said complaint discloses no ground for equitable relief by this Court, prays for no equitable relief or remedy which this Court has power to grant and that it appears from said complaint that this Court has no jurisdiction in equity to entertain the same.

"By reason whereof, the said defendants, and each of them, move that said complaint be dismissed."
This motion, one in the nature of a special demurrer, based upon four grounds, was overruled, on August 2, 1934, and appellants refusing to answer the complaint it was taken as confessed against them. After evidence heard a decree was entered which ordered, adjudged and decreed that plaintiffs were the absolute owners

of the real estate in question and appurtenances, free and clear of any and all claim or interest therein of defendants and rightfully in possession thereof as against any claim or interest therein of defendants; that the lease, assignments thereof, trust deeds, mechanics' liens, judgments, and any and all claim or interest in and to said real estate and appurtenances of defendants are set aside and *declared null, void,* terminated and at an end as against plaintiffs, as a cloud upon their absolute title in fee simple in and to said real estate and appurtenances, and that the same be delivered up to be canceled under the direction of the court; that defendants are enjoined from interfering with the title or possession of plaintiffs, and the Northern Trust Company, defendant, is ordered and directed to transfer and deliver to plaintiffs all of the cash and securities remaining on deposit with it, free and clear of any and all claims and interests of defendants, and that defendants are forever barred and enjoined from claiming any right in said cash or securities.

Appellants contend that "the court erred in denying the motion of defendants to dismiss the complaint for the reason that the instruments sought to be removed as clouds upon title of plaintiffs did not constitute such clouds as a court of equity in Illinois has power to remove." As to the ten instruments and claims that plaintiffs ask to have set aside, etc., the lease and the assignments of the same naturally belong to one class; the others, consisting of three trust deeds from various lessees conveying the leasehold interest, claims for mechanics' liens against the leasehold interest, and certain judgments against the lessees, to another class. We will consider the two classes separately.

Appellants argue that the lease was not and could not be a cloud upon plaintiffs' title. Plaintiffs, in their brief, state: "Plaintiffs did not attempt in this suit to

have the indenture of lease declared void. It was a valid instrument when made, and though the leasehold which it created has been terminated, it is a valid instrument now, for the purpose of fixing the rights and liabilities of the parties while the leasehold was in existence and on and after its termination. Plaintiffs did not ask the Court to declare the indenture of lease invalid or non-enforceable *ab initio*. It was enforceable when made; and for the purpose of fixing the rights and interests of the parties, it is enforceable now. . . . Plaintiffs did not ask the Court to forfeit the leasehold.''

Our Supreme Court has frequently stated what constitutes a cloud on title:

''A cloud on a title is a semblance of a title, either legal or equitable, or a claim of an interest in lands appearing in some legal form but which is, in fact, unfounded. (*Rigdon v. Shirk,* 127 Ill. 411.) *It is a title or encumbrance apparently valid but actually invalid.* (*Goodkind v. Bartlett,* 136 Ill. 18.) It exists where the claim of an adverse party to land is valid upon the face of the instrument or the proceeding sought to be set aside, and extrinsic facts are required to be established to show the supposed conveyance to be *inoperative and void.* (*Reed v. Tyler,* 56 Ill. 288.) This court has held that a bill will not lie to remove a mere verbal claim or oral assertion of ownership in property as a cloud upon the title. Such clouds upon title as may be removed by courts of equity are instruments or other proceedings in writing which appear upon the records *and thereby cast doubt upon the validity of the record title.* (*Parker v. Shannon,* 121 Ill. 452.)'' (*Allott v. American Strawboard Co.,* 237 Ill. 55, 60–61. Italics ours.)

''A cloud on title is an outstanding claim or encumbrance, *which, if valid, would affect or impair the title of the owner, and which appears on its face to have that effect* but which can be shown by extrinsic evidence

to be *invalid.* A cloud exists where a title of an adverse party to land is valid upon the face of the instrument or the proceedings sought to be set aside, and it requires extrinsic facts to show the supposed conveyance to be *inoperative and void.* (*Reed v. Tyler,* 56 Ill. 288.) A cloud is where the claim of an adverse party is valid upon the face of the instrument and it requires the establishment of extrinsic facts to show the supposed conveyance to be *invalid.* (*Brooks v. Kearns,* 86 Ill. 547.) A cloud is a semblance of title, either legal or equitable, or a claim of interest in lands appearing in some legal form, but which, in fact, is unsound. (*Rigdon v. Shirk,* 127 Ill. 411.) A cloud upon title is a title or encumbrance apparently valid but actually *invalid.* (*Goodkind v. Bartlett,* 136 Ill. 18; 7 Cyc. 255; 6 Am. & Eng. Ency. of Law,—2d ed.—147.) Where the title claimed is invalid on its face, so that it can never be successfully maintained, it can never amount to a cloud. (*Gage v. Starkweather,* 103 Ill. 559.) In such a case an action based on such invalid claim of title would fall of its own weight, without any proof in rebuttal. If the proceedings on which a claim is founded are on their face totally void, so that any person inspecting the record and comparing it with the law is at once apprised of the irregularity, there is no cloud. (Cooley on Taxation, 542.) If the instrument or proceeding is on its face plainly illegal or void there is no cloud, and there is no occasion for the interference of a court to nullify or set it aside. (6 Am. & Eng. Ency. of Law,— 2d ed.—153.)'' (*Roby v. South Park Com'rs,* 215 Ill. 200, 203–4. Italics ours.)

''A bill will not lie to remove as a cloud on the title a mere verbal claim or oral assertion of ownership in land. The clouds which may be removed by a court of equity consist of instruments or other proceedings in writing which appear upon the record *and cast doubt upon the validity of the record title.* (*McCarty v. McCarty,* 275 Ill. 573; *Allott v. American Strawboard Co.,*

237 id. 55; *Parker v. Shannon*, 121 id. 452.) The bill in this case was filed for the sole purpose of securing the construction of the language used in a deed. The alleged cloud was the mere verbal claim of ownership by appellants. The bill did not state such a cause of action as authorized equity to grant relief. The alleged cloud was not a cloud as defined by the authorities." (*Trustees of Schools v. Wilson*, 334 Ill. 347, 350. Italics ours.)

According to the allegations of the complaint and the admissions of counsel for plaintiffs, the lease is a valid instrument that evidences the agreement of the parties thereto. The general rule that a lessee is bound to admit his landlord's title and a valid lease can never be a cloud upon the title is well settled. Bearing in mind what our Supreme Court has stated as to what constitutes a cloud, we are unable to see how the instant lease, a valid instrument, which by its terms admits the title of plaintiffs, could be a cloud on their title. The instrument which constitutes the alleged cloud was executed by plaintiffs and Libbie B. Hill, whose right, title and interest in the premises plaintiffs subsequently acquired, and appellants' estate in the premises was derived through plaintiffs' title, and appellants are, of course, standing by that title in this proceeding. The lease was recorded by plaintiffs, or with their consent. Plaintiffs allege that the relationship of landlord and tenant in possession existed, under the lease, for a period of eight years. If it be assumed that the lease was properly terminated, the act of termination would not operate to make a valid lease an instrument "apparently valid but actually void," and a cloud upon the title. Indeed, plaintiffs concede, in their brief, that under the allegations of the complaint the act of termination did not cause the lease to become invalid, void, or non-operative. Terminating the lease could affect only the tenancy of appellants and it could not create a cloud where none existed before. Indeed, plaintiffs here argue that after ter-

·minating the lease and re-entering upon the premises they still retained their rights under the lease; that the lease ''is a valid instrument now, for the purpose of fixing the rights and liabilities of the parties while the leasehold was in existence and on and after its termination . . . it is enforceable now.'' In the complaint they not only treat the lease as a valid and enforceable one but they seek to have the court determine (1) that they have proceeded properly and in accordance with the terms of the lease, in terminating it, in re-entering the premises and in repossessing the same; (2) that they are the absolute owners of the real estate and appurtenances, free and clear of all claim or interest of defendants therein and rightfully in possession as against any claim or interest of defendants under the lease, and (3) *to have the court decree them certain alleged rights under the lease.*

As an afterthought, plaintiffs now contend that the complaint can be sustained upon the theory that the doctrine of *functus officio* applies to the lease. Bouvier defines the term *functus officio* as follows:

''A term applied to something which once has had life and power, but which has become of no virtue whatsoever.''

Black's Law Dictionary, as follows:

''Applied to an officer whose term has expired, and who has consequently no further official authority; and also to an instrument, power, agency, etc., which has fulfilled the purpose of its creation, and is therefore of no further virtue or effect.''

14 Am. & Eng. Ency. of Law,—2d ed.—p. 563, as follows:

''The term (*functus officio*) is also applied to something which once had validity and power, but which has become of no value.''

It is a sufficient answer to plaintiffs' instant contention to say that the complaint does not proceed upon

the theory that the lease had become *functus officio* at the time that the complaint was filed. Indeed, to justify the relief plaintiffs seek, in the complaint, they are obliged to contend that the lease, not only at the time the complaint was filed, but now, has validity and power. To support their contention that the doctrine of *functus officio* applies to the lease plaintiffs cite only two Illinois cases, *Skinner v. Baker,* 79 Ill. 496, and *Maguire v. City of Macomb,* 293 Ill. 441. In the *Skinner* case the land in question was sold upon a cash basis and it was agreed that the deed from the seller to the buyer should be deposited with the cashier of a bank; that the buyer should deliver to the cashier a draft for $5,800, drawn upon one Hughes, which should be sent for payment and that in the event the draft should be paid in due time the deed should then be placed upon record, and in case the draft was not paid the deed was to be returned to the seller. The buyer signed an agreement to give up and relinquish all claims to the premises if the draft should not be paid. The draft was not paid, and the deed was returned by the cashier to the agent of the seller and canceled. But the buyer gave a written lease to the premises to a third party, which instrument was recorded. The Supreme Court held that no title passed by the deed, that all claim of the grantee to the land under the contract was extinguished and all rights of those claiming under him ceased, and that the recorded lease was a cloud upon the title of the owner and should be removed by a court of equity. The lease in that case cast doubt upon the validity of the record title. In the *Maguire* case, Maguire devised, by will, certain land to the city of Macomb, subject, however, to conditions. Upon his death his widow, as trustee under his will, filed a bill to have a certain ordinance, in relation to the demise, passed by the city and a written acceptance of the land by it canceled and set aside as clouds upon her title as trustee, and to

have the title to the land confirmed in her as trustee. The Supreme Court held that no title ever vested in the city because of its failure to comply with all of the conditions precedent, and that the acceptance and ordinance were clouds on the trustee's title.

Plaintiffs argue that equity has jurisdiction to remove from the records "*any instrument* which, though apparently outstanding and valid, is in reality *functus officio,* where evidence *de hors* such record of title itself is necessary to show invalidity or termination," and cite a number of Illinois cases, none of which sustains plaintiffs' theory that the doctrine of *functus officio* applies to the instant lease. Only the first case cited in support of the above contention need be noticed, *Redmond v. Packenham,* 66 Ill. 434, 438. In that case certain land was purchased with the money of Redmond and the title taken in the name of one Deveraux, in order to prevent its being made liable to the debts of Redmond. Deveraux executed a mortgage upon the premises to one Sizer, February 18, 1847, and on December 3, 1847, Deveraux conveyed the land to the heirs of Redmond and thereby completely executed the supposed trust except in so far as he had made the said mortgage. The trial judge found that the mortgage debt had been paid, and the Supreme Court sustained that finding and held that the incumbrance of the mortgage was extinguished by the payment, and the heirs' title was complete under the conveyance from Deveraux. The distinction between the mortgage there involved and the lease in the instant one is obvious. The mortgage purported to convey the title of Deveraux. Here the lease admits plaintiffs' title. Plaintiffs also cite the following from 51 C. J. 158–9:

"Leases and Contracts Therefor. The general rules as to what constitute clouds on title apply to leases and contracts to lease. Whenever proof of extrinsic facts is necessary to establish that an outstanding lease, reg-

ular on its face, was invalid at its inception, or, although originally valid, has, by subsequent events, become *functus officio,* it constitutes a cloud on title. The same instrument may create both the title and the cloud thereon. Thus a provision in a long-term lease which the lessor asserts denies the lessee the right to replace buildings thereon, and which is susceptible of such construction, is a cloud on the lessee's title. But there is no cloud on title where a lease or contract therefor is void on its face, or where extrinsic facts must be proved in order to establish its validity.''

An Illinois case, *Skinner v. Baker,* to which we have already referred, is one of the cases cited by Corpus Juris in support of the above text. While we deem it unnecessary to consider decisions of the sister States in determining this appeal, we may say that the decisions of other States cited by Corpus Juris in support of the above text, save one, *Wright v. Davis,* 145 Va. 370, relate to oil and gas leases, and the peculiar nature and purposes of such instruments are discussed at some length in one of the cases cited, *Crain v. Pure Oil Co.,* 25 F. (2d) 824, 830. In *Wright v. Davis, supra,* a milling company leased a water power from a trustee and the beneficial owners. In deciding the case the court said (p. 381):

''A generation has passed, several of the original parties are dead and their plans for developing and utilizing the water power have all failed. Neither the lessee milling company nor its successors, the appellants, ever either asserted or claimed any of their peculiar rights under the lease (which also imposed burdens) or discharged any of its obligations thereunder. There has been a failure of consideration to the lessors. What then should a court do? We confess that we know of nothing better to be done than that which the trial court concluded to do, and that is to put the parties in

the same position which they occupied at the time they made and expressed their agreement in writing.''

Plaintiffs contend that the complaint is aided by section 50 of the Chancery Act, Ill. State Bar Stats. 1935, ch. 22, ¶ 50, as amended in 1911. We find no merit in this contention. Plaintiffs, in their brief, treat the complaint as one to remove clouds from their title.

If we are correct in our conclusion that the lease was not a cloud upon plaintiffs' title, it would follow that the assignments of the lease would not be clouds.

There is merit in appellants' contention that ''plaintiffs, instead of bringing a direct action to determine that defendants are in default under the lease involved herein and to settle all the rights of the parties arising under said lease, including questions as to rent due, if any, and the right to the funds on deposit with The Northern Trust Company, have elected to bring an action under the guise of a bill to remove a cloud, whereby they seek to have the Court remove the lease in question from the record upon the assumption that defaults have existed and that the plaintiffs have complied with the terms of said lease and successfully terminated the same and established their right to such funds on deposit.'' Appellants cite, in support of their contention, *Nelson v. Burns,* 255 Ill. App. 314; *First Congregational Church v. Page,* 257 Ill. 472; *Greenough v. Greenough,* 284 Ill. 416; *Chicago Auditorium Ass'n v. Cramer,* 8 F. (2d) 998; *Willing v. Chicago Auditorium Ass'n,* 277 U. S. 274. To refer to one of the cases cited: In *Nelson v. Burns, supra* (opinion by Mr. Justice Wilson), suit was brought by a landlord, based upon a lease that contained, *inter alia,* an option for renewal under certain conditions. The landlord claimed that the tenant made statements to prospective tenants to the effect that he had a lease beyond the period fixed by the lease and that he intended to remain upon the premises, and the landlord sought to enjoin the tenant from interfering with the leasing of the

premises and from casting a cloud upon the landlord's title by claiming rights in the premises beyond the term of the lease. The action there was clearly without merit, as spoken words cannot be construed as a cloud upon title, but we refer to the case because certain language in the opinion bears upon the complaint in the instant case. To quote from the opinion (p. 320):

"Courts do not undertake to construe provisions of leases before a cause of action arises and will not undertake to construe them for the purpose of guiding litigants in regard to some future course of conduct. Neither does a case of this character come within the section of the Chancery Act, Cahill's St. ch. 22, sec. 50, giving to *nisi prius* courts the right to hear and determine bills to quiet title and to remove clouds.

"*There is no question of title involved in this proceeding. Both the landlord and the tenant agree that the title is in the landlord. A tenant cannot dispute his landlord's title. The lease, itself, is not a cloud. Complainants, however, seek to create a cloud by reason of statements of the tenant concerning a clause of that lease.* We do not believe this is sufficient to place this proceeding among that class of cases intended by the provisions of section 50 of the Chancery Act, Cahill's St. ch. 22, par. 50. *Chicago Auditorium Ass'n v. Cramer,* 8 F. (2d) 998.

"The provision of the lease contained in the instrument entered into by and between the parties, if in itself a cloud, was created by the acts of both the defendant and the complainants. In our opinion, however, section 12 of the lease is more than a cloud. It is a claim under which the defendant asserts his right to a new lease. It may be a good claim or it may be a doubtful claim, but it is more than a cloud." (Italics ours.)

As to the second class of instruments that plaintiffs prayed be set aside as clouds upon the title, etc., it appears from the allegations of the complaint that they

are all claims against the interest of the lessee and that they do not affect, in any way, the interest of the lessors. If we are correct in our conclusion that the lease is not a cloud upon the title it follows that the instruments belonging to the second class are not clouds.

Plaintiffs concede that the direction in the decree to the Northern Trust Company to deliver to plaintiffs the securities in question was a relief "purely incidental" to the principal relief sought.

Appellants have strenuously argued several other contentions in support of their claim that the decree should be reversed and their motion to dismiss sustained, but in the view that we have taken of the appeal we do not deem it necessary to consider the same.

The decree of the circuit court of Cook county as to defendants 1550 Hinman Avenue Building Corporation, Frank W. Cauley and Rosalie Hill Cauley (appellants) is reversed, and the cause is remanded with directions to the trial court to vacate the order of August 2, 1934, overruling and denying the motion of appellants to dismiss the complaint, and that an order be entered sustaining the motion of appellants to dismiss the complaint as to them.

*Decree reversed as to appellants and cause remanded with directions to vacate order of August 2, 1934, and to enter order sustaining motion of appellants to dismiss the complaint as to them.*

SULLIVAN and FRIEND, JJ., concur.

### ADDITIONAL OPINION UPON PETITION FOR REHEARING

Plaintiffs now concede that they are unable to cite any Illinois case that holds that a lease like the one in question constitutes a cloud on title which a court of equity will remove, but they still contend that other jurisdictions have uniformly so held. As we stated in our opinion, we deem it unnecessary to consider deci-

sions of the other States, in view of the frequent decisions of our Supreme Court as to what constitutes a cloud on title. It is somewhat significant, however, that the able counsel for plaintiffs cite only four cases in support of their contention, *Wilmore Coal Co. v. Brown,* 147 Fed. (Penn.) 931; *Riedman v. Barkwill* (Cal.), 34 P. (2d) 744; *Andrews v. Russell,* 85 Cal. App. 149, 259 Pac. 113; *Anderson v. Guenther* (Ore.), 25 P. (2d) 146. *Wilmore Coal Co. v. Brown* involved a bill to cancel certain coal leases, executed in 1878 and 1880, as clouds upon the title. As the court states in its opinion: "According to the law of Pennsylvania, by which the subject is necessarily governed, the so-called leases to the defendant Brown constitute a sale and conveyance of the coal and minerals in place." (Citing cases.) The section where the leases were located was entirely undeveloped at the time the leases were made, except for farming. There was no railroad into the section and the leases provided that unless one was so built within five years the leases should be null and void. No such railroad was ever built, and the lessee for 24 years took no steps to mine or develop the land. The court held that under the facts of the case the leases were *invalid* and constituted a cloud upon the title. *Andrews v. Russell* involved an oil lease. In our original opinion we referred to the peculiar nature and purposes of oil and gas leases. In *Riedman v. Barkwill* an oil and gas lease was involved, and the decision is based upon *Andrews v. Russell.* *Anderson v. Guenther* presents a petition for a rehearing, the original opinion appearing in 22 Pac. (2d) 339. There the Supreme Court of Oregon held that plaintiff's equity suit to remove a cloud from title was not maintainable because she had an adequate remedy at law. A judgment had been rendered against her, in an action at law, execution levied upon certain real property owned by her, and upon the execution sale

Guenther, the plaintiff in that proceeding, purchased the property. More than a year after the entry of the judgment plaintiff entered a motion to vacate the judgment. While that motion was pending she filed her suit to remove a cloud on title claiming that the service of summons by publication in the action at law was fatally defective. The Supreme Court held that the action of the trial court in dismissing her equity suit was justified upon the ground that plaintiff had an adequate remedy at law; that if her contentions in respect to the service by publication were true, the judgment was void and it was the duty of the circuit court to vacate it. Plaintiff also contended, in her equity suit, that in the law action the trial court lacked authority to set aside the sheriff's deed and that therefore the maintenance of the suit to remove cloud was necessary, but it was held that there was no merit in this contention and the court observed that orders vacating the judgment, the sale, and the confirmation of the sale, would appear in the same record as the one out of which the sheriff's deed emanated. None of the foregoing cases supports plaintiffs' contention.

In their petition for rehearing plaintiffs urge that if we adhere to our holding that the lease does not constitute a cloud on title that equity can remove, we should then treat the complaint as one to establish and confirm title to real estate, and that we should affirm the portions of the decree which hold that plaintiffs are the absolute owners of said real estate and appurtenances, free and clear of all claim or interest of the defendants and rightfully in possession as against any claim or interest of the defendants and that the defendants and all persons claiming under them are forever enjoined from asserting any claim to the real estate and appurtenances as against plaintiffs' title and right of possession. This belated position of plaintiffs tends to support the contention of defendants, strenuously urged, that the present proceeding is an attempt, in the

guise of a complaint to remove a cloud from title, where none exists, to avoid direct action in which the rights of the parties, arising under the lease, might be determined. In their brief all of the points urged in support of the decree are based upon the theory that the complaint is one to remove certain clouds from title. To quote from their brief: "Plaintiffs did not ask the aid of the Court, either in terminating the leasehold or in declaring that what plaintiffs had done to terminate it had been effective. The leasehold estate which the lease created had been terminated before the bringing of suit; plaintiffs were back in possession; all improvements and appurtenances, if any, had become the absolute property of the plaintiffs without any right of defendants to compensation therefor . . . . What then was the relief sought in these proceedings? Plaintiffs alleged their ownership and possession; the making and recording of the indenture of lease; the creation by the lessees of a variegated assortment of recorded claims subsidiary to the leasehold; the termination of the leasehold, and, *ipso facto*, of the claims; the continued appearance on the record of both lease and instruments evidencing the claims; and they thereupon prayed removal of these recorded instruments from the record as clouds on their title. Did such a complaint present a proper case for equitable cognizance?" From the allegations of the complaint it is clear that the sole ground urged for equitable relief is the alleged cloud on title. In this connection it must be noted that the second class of instruments that plaintiffs prayed be set aside as clouds upon the title, etc., are claims against the interest of the lessee and do not affect, in any way, the interest of lessors, and if the lease is not a cloud upon the title the instruments belonging to the second class are not clouds. Plaintiffs are obliged to justify certain provisions of the decree "as incidental to the main relief asked."

Plaintiffs argue that as they are now in possession of the premises and, therefore, unable to bring forcible entry and detainer proceedings, and as the lease is of record, a prospective purchaser would be obliged to investigate the facts as to whether or not it is still in force and effect, and that as long as the lease remains upon the records the owner of the property would have difficulty in disposing of it. In the instant case plaintiffs did not see fit to bring forcible entry and detainer proceedings, but they allege that, in accordance with the terms of the lease, they declared the lease and the term demised ended, ''re-entered the said demised premises . . . and expelled, removed and put out from the said premises . . . every other person occupant in or upon the same, including each and all of the defendants herein, and on said date repossessed the same and now possess and enjoy the same.'' Plaintiffs are hardly in a position to complain of the consequences that followed their own choice of procedure. But we do not think that the situation is as serious as plaintiffs state. They allege that they are in possession of the premises, and possession of land is notice to all persons dealing with it of whatever rights the one in possession claims. Plaintiffs have the right to record copies of the notices of termination and the affidavit of service, which would be further notice to the world of plaintiffs' claims as to the lease. The evidence shows that they put up a sign on the property ''so people would know who the owner was,'' appointed an agent to have charge of the building to be erected, and that they have signed leases for apartments in said building.

The petition for rehearing is denied.

*Rehearing denied.*

Sullivan and Friend, JJ., concur.